CHALK v. COLLIER. (No. 1453.)

(Court of Civil Appeals of Texas. Amarillo. Jan. 22, 1919. Rehearing Denied Feb. 19, 1919.)

1. PARTNERSHIP ⊚⇒101—JOINT AND SEVERAL LIABILITY OF MEMBERS—CONTRIBUTION.

When partnership business was wound up, entailing loss represented by balance due on a note at bank, if one partner paid bank more than his share, he was entitled to contribution.

2. PARTNERSHIP ⊚⇒101 — ASSUMPTION OF DEBT BY ONE PARTNER—LIABILITY OF OTHERS.

Where one of four partners on winding up of business assumed payment of firm's indebtedness, there was several liability on part of each of other three partners to pay him one-fourth of loss.

3. PARTNERSHIP ⊚⇒101—ASSUMPTION OF INDEBTEDNESS BY MEMBER — CONTRIBUTION — INSOLVENCY.

If any of partners liable to contribution in favor of one who had assumed entire firm indebtedness were insolvent, liability of others might be proportionately increased, but insolvent would remain liable for contribution to those paying, and might be compelled to pay them if he thereafter became able.

4. PARTNERSHIP ⊚⇒101—ASSUMPTION OF INDEBTEDNESS—CONTRIBUTION—SETTLEMENT.

Liability for contribution of each of partners in firm whose entire indebtedness was assumed by one being several, assuming member of firm, entitled to contribution from others, could make such settlement of their several liabilities to him as he might see proper.

5. PARTNERSHIP ⊚⇒101—ASSUMPTION OF INDEBTEDNESS—CONTRIBUTION BY PARTNERS—SETTLEMENT WITH TWO PARTNERS—EFFECT ON ANOTHER.

Partner who assumed firm's indebtedness could not make settlement with two other partners of their several liabilties to him in way of contribution, without concurrence of third partner, if settlement would increase third partner's liability, or deprive him of any rights against other two contributing partners.

6. PARTNERSHIP ⊚⇒101—CONTRIBUTION—SETTLEMENT.

Where a partner having right of contribution from three other partners settles without assent of third partner with other two for less than their proportionate part, third partner cannot be held liable for more than his proportionate part.

7. FRAUD ⊚⇒27—DECEIT OF ONE PARTNER BY ANOTHER.

One of four partners, who, at time of settlement between him and another partner who had assumed entire firm indebtedness, was only liable for payment of fourth of loss, and was induced by fraudulent concealment and representation of facts by partner who had assumed indebtedness to pay more than he owed by way of contribution, had a cause of action.

8. PARTNERSHIP ⊚⇒242(3) — PARTNERSHIP TRANSACTION—ASSUMPTION OF FIRM DEBT—ACTION—PARTIES.

Two of four partners, with whom another member of firm, who had assumed its entire indebtedness on winding up of its business, had settled his claim for contribution from them, held not necessary parties to suit against such assuming partner by fourth partner to recover the difference between what he had paid assuming partner and amount he was legally liable to contribute.

Appeal from District Court, Motley County; J. H. Milam, Judge.

Suit by R. L. Collier against J. W. Chalk. From a judgment for plaintiff, defendant appeals. Affirmed.

G. E. Hamilton, of Matador, for appellant. Bouldin & Surles, of Matador, and W. D. Wilson, of Spur, for appellee.

BOYCE, J. The record in support of the judgment authorized the court and jury trying this case to find the following facts: That appellant, Chalk, appellee, Collier, C. E. Klineike, and Martin Gray formed a partnership for the purchase, handling, and resale of a particular bunch of cattle. Klineike and Gray were to be silent partners, but all parties were to share equally in the profits and losses resulting from the partnership. The completed transaction resulted in a loss represented by the balance due on a note executed by Chalk and Collier, payable to a Ft. Worth bank, which balance at the time of the settlement between Chalk and Collier, later referred to, amounted to the sum of $10,702. In anticipation of his individual payment of this balance, Chalk, in the summer of 1914, secured Klineike and Gray to execute and deliver to him their respective notes, for the sum of $2,175 each, payable three years after date, and also their joint note for the sum of $600 payable in six months. When he took these notes he agreed

with them that he would individually pay the partnership note due the bank, and, in effect, that the said Klineike and Gray should be released from any liability other than on the notes so executed to him. Later appellant Chalk paid the note at the bank, and in October, 1914, whether before or after such payment is not clear, met Collier, for the purpose of arranging payment of Collier's share of such loss. At this time Chalk represented to Collier that Klineike and Gray had refused absolutely to do anything; that nothing could be made out of them, and that he and Collier would have to pay the loss equally. By such representations he induced Collier to pay him one-half of the amount of such loss, to wit, $5,351, payment being made by Collier conveying to said Chalk certain land at an agreed valuation, and the execution of his note for the balance, in consideration of which Chalk had already paid or was to thereafter, individually pay said partnership note. Some time later Collier learned of the execution of the said notes by Klineike and Gray to Chalk and the agreement under which they had been made. The $600 note had been paid, but the other two notes were not due at the time of the trial. These facts were not uncontroverted; they were contradicted by Chalk's theory of the transaction and testimony in support thereof, but since the court and jury found against him on his contention it is not necessary to here state fully his version of the matter.

Appellee Collier brought this suit, alleging the facts substantially as stated, seeking to recover of Chalk the sum of $2,675.50 less the balance then due on the note he had executed to Chalk, and obtained judgment as prayed for. The only assignment on this appeal complains of the refusal of the trial court to enter judgment on Chalk's motion in favor of Collier against Chalk for an undivided one-half interest in the Klineike and Gray notes, and in favor of Chalk against Collier for the balance due on the note that had been executed by Collier to Chalk in said settlement agreement.

[1-6] When the partnership business had been wound up entailing a loss represented by the balance due on the note at the Ft. Worth bank, each partner, of course, was liable, jointly and severally, to the creditor and equally among themselves for the payment thereof, and if one of them paid more than his share of the debt he was entitled to contribution from the others. Chalk's rights against his copartners upon the assumption and payment of said indebtedness are to be determined by the application of the principles of the law of contribution. There was a liability on the part of each partner to pay him one-fourth of the loss. This liability was several and not joint. Faires v. Cockrill, 29 S. W. 672; Graves v. Smith, 4 Tex. Civ. App. 537, 23 S. W. 603. If any of those liable to contribution were insolvent the liability of the others might be proportionately increased, but the insolvent would remain liable for contribution to those paying, and might be compelled to pay to them if he thereafter became able. Since the liability for contribution of each of the partners was several, we see no reason why Chalk could not make such settlement of this several liability to him as he might see proper. He could not, of course, make a settlement with Klineike and Gray without the concurrence of Collier that would increase Collier's liability or deprive him of any rights against Klineike and Gray. If he saw fit to settle with Klineike and Gray and accept anything less than full payment in cash of their proportionate part of their liability, without the concurrence of Collier, and at the same time agree with Klineike and Gray that what he received from them should be "in full satisfaction of what they owed on this transaction," then the only way to protect both this contract and the rights of Collier would be to treat the settlement with Klineike and Gray as in full discharge of their entire share of the contribution, leaving the liability of Collier to be for the payment of only one-fourth of said loss, and we believe that this is the proper view to take of the matter. We find no Texas authorities that directly support this position, though it is in harmony with the general principles of the law of contribution and the specific holdings of our courts. The following authorities outside of this state are directly in point: Cummings v. May, 91 Ala. 233, 8 South. 790; Currier v. Baker, 51 N. H. 613; In re Wheeler, 1 Md. Ch. 80—reference to which will be found in note on page 835, vol. 13, C. J.; Brandt on Suretyship & Guaranty, § 307. The following quotation from the syllabus of the decision in the Alabama case fairly states the holding of the court:

"Where a surety by agreement accepts from some of his cosureties less than their share, and pays the surety debt, releasing such sureties from further liability, he cannot deny that they were solvent and good for their full proportion; and so a cosurety, who was not included in the agreement, can only be made to contribute such amount as he would have been liable for if the released sureties had contributed their full share."

[7] If we are correct in this conclusion, Collier, at the time of the settlement between him and Chalk, was only liable for the payment of one-fourth of the loss, and if he was induced, by the fraudulent concealment and representation of the facts by Chalk, to pay more, he had a cause of action for damages for deceit and is entitled to recover the difference between what he paid and what he was legally liable to pay. We think, therefore, that the proper judgment was entered in this case. The judgment tendered by appellant would bind Collier by an agreement made

with Klineike and Gray, without his knowledge and consent, and not in accordance with what his rights would have been against such parties. It cannot be held, we think, that such an agreement would be binding because of the partnership. In these transactions the parties were dealing with each other as individuals and for their individual benefit.

We are inclined to think that the evidence would be sufficient to raise an issue of fact as to the solvency of Klineike and Gray. While Chalk testified that he investigated their financial condition and "found them absolutely insolvent," there were some circumstances that indicated that this might not be true: for instance, they paid the $600 note when it became due, and there is some other testimony to show that they were interested in other business ventures. The jury discredited Chalk's evidence in other particulars, and might have done so in the consideration of such an issue had it been submitted. We do not think, however, that a finding on this issue is material to a decision of the case.

[8] It was suggested, upon the submission of the case on oral argument, that perhaps Klineike and Gray were necessary parties to this suit. The suggestion was made on the idea that the suit involved an accounting between partners, and all partners were necessary parties to such a suit. We are convinced, however, that there was no necessity for making Klineike and Gray parties. The affairs of the partnership had been wound up, and the loss, about which there was no dispute, consisted in a definite balance due on a certain note. The agreements between the parties in this case were all had on this theory and related to the matter of contribution. There was no necessity for an accounting under such facts. Long v. Garnett, 59 Tex. 232; Bates on Partnership, 861, 866.

We think the judgment of the lower court should be affirmed.