**INDIAHOMA REFINING CO. et al. v. WOOD et al. (No. 2154.)**

(Court of Civil Appeals of Texas. Amarillo. June 13, 1923. Rehearing Granted Oct. 10, 1923.)

**1. Appeal and error ⟺253, 275—Affidavit attached to answer held part thereof and sufficiency thereof required to be tested by exception at trial, and ruled on to be available on appeal.**

Defendant's affidavit denying a partnership, attached to the answer to verify the allegations, *held* a part of the pleading, and the sufficiency of the affidavit must be tested by exception and ruled on in the trial court, in order to be considered on appeal.

**2. Mines and minerals ⟺74—Assignee's special agreement in purchasing interest in lease, to pay part of expenses, held not promise to pay sum directly to lessee.**

Special agreement by one purchasing an assignment of an interest in an oil and gas lease, to pay to his assignor one-half of the expenses of the lease, was not a promise to pay such sum directly to the lessee owning the remaining interest.

**3. Mines and minerals ⟺97—Contract to acquire interest in lease held not to create partnership liability until execution of contract.**

A trustee's contract to acquire a half interest in a lease contract could not create a partnership liability against him or his alleged principal until the contract was executed.

**4. Mines and minerals ⟺97—Acquisition of interest in lease, by assignment and immediate transfer thereof, held not to create partnership liability.**

Where a trustee's contract to acquire a half interest in an oil and gas lease was made on October 16, and executed on October 25, when the assignment was delivered to him, but on the same date he assigned his interest to another, there was no partnership liability against him or his alleged principal, and especially where no expenditures were made during that time.

**5. Corporations ⟺407(2) — Trusts ⟺173 — Mere relation of trustee or that of vice president of alleged principal, a corporation, could not confer power to bind cestui que trustent or corporation.**

The mere fact that one may have been trustee *held* not to confer on him the power

to bind the cestui que trustent, nor would the fact that he was vice president of his alleged principal, a corporation, be sufficient within itself to bind the corporation.

**6. Mines and minerals ⟺99(2)—Members of mining partnership do not possess right to agree upon persons to be admitted.**

In mining partnerships, the delectus personæ, the right of members to agree upon the persons to be admitted into the relation of mutual trust as in ordinary trading partnerships, does not exist.

*On Motion for Rehearing.*

**7. Mines and minerals ⟺97, 101—Parties held to become partners or joint adventurers under agreement for sale of interest in lease.**

Where plaintiff sold a one-half interest in an oil and gas lease, with the agreement that he was to proceed with its development, and the buyer was to pay him one-half of the expenses incurred, such parties became either partners or joint adventurers, engaged in a joint enterprise for their common benefit; the agreement for the management of the business being in the nature of articles of partnership or association.

**8. Corporations ⟺388(5)—That corporation could not form partnership held no defense against payment of expenses incurred under partnership agreement.**

A purchaser of an interest in an oil and gas lease, agreeing to pay part of development expenses, could not, after the business had been conducted under the agreement and expenses incurred, defeat payment merely because it, as a corporation, could not enter into a partnership.

**9. Mines and minerals ⟺101—Assignee of interest in lease creating joint enterprise held to become joint adventurer, and liable thereafter for further development of property.**

Where defendant by purchase of a part of the interest in an oil and gas lease of the H. Company, who had agreed to pay part of development expenses and took an assignment of such interest in the H. Company's contract with plaintiff, in contemplation of a continuance of the joint enterprise, and allowed plaintiff to continue to handle the property as under the original agreement with the H. Company, it came in as a joint adventurer, and became bound to reimburse plaintiff to the extent of its interest in the enterprise for expenditures thereafter made by him in the further development of the property, but not for expenses previously incurred.

**10. Mines and minerals ⟺101 — Liability of parties to oil and gas enterprise held several and in proportion to respective interests.**

Liability of parties to a joint enterprise, under an oil and gas lease for development expenses, *held* several, and in proportion to their respective interests in the enterprise.

**11. Mines and minerals ⟺101—In suit for share of expenses, allegations held insufficient in not alleging expenses were incurred after defendant became party to joint enterprise.**

In a suit against parties to an oil and gas enterprise for share of expenses incurred in

developing the property, pleadings *held* insufficient as against one defendant in not alleging expenses were incurred after it became a party to the enterprise.

**12. Mines and minerals ☞99(2)—Accounting and dissolution of partnership held not condition to right of copartner to enforce contribution for expenses incurred.**

Rule that one partner may recover of another on partnership transactions only on a general accounting and dissolution, *held* not to apply to a mining partnership, where the contract creating it provided for payment of share of expenditures each month, especially where the enterprise had practically ended.

**13. Mines and minerals ☞99(2) — Attaching property by partner and replevy by copartners held not to enlarge rights of partner seeking to enforce contribution.**

That party to a joint oil and gas enterprise, attached a part of the personal property belonging to the joint enterprise, and it was replevied by other parties, *held* not to give him any right to a judgment against them for share of expenses that he would not otherwise have had.

**14. Mines and minerals ☞101—Property of joint enterprise might be chargeable in general accounting with equitable lien to secure repayment of expenditures made.**

Property belonging to a joint oil and gas enterprise might, in a general accounting between the parties, be chargeable with an equitable lien to secure the repayment of the expenditures made by one of the parties in the conduct of the business.

Error from District Court, Wichita County; P. A. Martin, Judge.

Suit by G. Clint Wood and others against the Indiahoma Refining Company and others. A judgment was entered against defendants, except the Home Oil Refining Company, as to which the action was dismissed, and defendants bring error. Reversed, and remanded for new trial on rehearing.

Bonner, Bonner & Sanford, of Wichita Falls, and Burns, Christian, Gumm & Gordon, of Fort Worth, for plaintiffs in error.

Cox, Fulton & Myers, of Wichita Falls, for defendants in error.

KLETT, J. In a suit filed by defendant in error, G. Clint Wood, against the Indiahoma Refining Company, and the St. Louis & Fort Worth Producing Company, plaintiffs in error, and the receivers of the Home Oil Refining Company, it was alleged and proven that on June 17, 1919, plaintiff entered into a written contract whereby he agreed to sell to the Home Oil & Refining Company an undivided one-half interest in and to a 117-acre oil and gas lease in Wichita county, Tex., for a consideration of $500,000, payable as follows: $10,000 cash, $40,000, July 7, 1919, $50,000 August 7, 1919, $50,000 September 7, 1919, and $100,000 October 7, 1919. The contract required the plaintiff to execute an assignment to the one-half interest aforesaid and place the same in a bank in Wichita Falls, for delivery to the purchaser upon payment of the amount specified. The balance of the consideration was made payable out of the purchaser's one-half of the oil produced on said lease. The contract obligated the purchaser to pay, on or before July 7, 1919, one-half of the cost of equipment added to the lease and development done thereon, and also—

"pay one-half of all expenses of all kinds connected with said lease and development thereof, payment to be made on or before the 10th of each month after such expenses are incurred."

It is further stipulated in the contract that plaintiff Wood is to retain the management and control of the lease, under the terms of the contract, until two producing wells are completed, and that the company is to take the management and control of said property after the two wells are completed. The assignment from the plaintiff to the purchaser is dated October 20, 1919, and preserves the agreement as to the expenses in the following language:

"It is further agreed and understood between the parties hereto that one-half of all the actual and necessary costs and expenses of developing and operating said lease from June 17, 1919, shall be paid by the said Home Oil Refining Company of Texas; the other half of such expenses to be paid by said G. C. Wood."

On October 25, 1919, the Home Oil Refining Company assigned to the St. Louis & Fort Worth Producing Company an undivided one-fourth interest in said lease, together with an undivided one-half interest in said contract. It also appears that on October 16, 1919, the Home Oil Refining Company contracted to sell to J. A. Berninghaus, trustee, an undivided one-fourth interest in said lease, together with an undivided one-half interest in the contract between G. Clint Wood and the Home Oil Refining Company; it being recited that the purchaser is desirous "of acquiring an undivided one-half interest in all the rights and benefits of said contract." On October, 25, 1919, the Home Oil Refining Company assigned to J. A. Berninghaus, trustee, an undivided one-fourth interest in said lease, together with an undivided one-half interest in said contract. On the same day, J. A. Berninghaus, trustee, assigned to the St. Louis & Fort Worth Producing Company an undivided one-fourth interest in said lease, together with an undivided one-half interest in said contract between the Home Oil Refining Company and G. Clint Wood. It will be noted here that J. A. Berninghaus, trustee, transferred his interest in the contract and lease to the St.

Louis & Fort Worth Producing Company on the same day he received the assignment; and at the same time, to wit, October 25, 1919, the St. Louis & Fort Worth Producing Company became the owner of all of the Home Oil Refining Company's original interest. The lease to G. Clint Wood is not in the record. The covenants of the lease are not shown. There is no proof that the lessees or the assignees bound their assigns to any of the covenants. There is no evidence that either of the plaintiffs in error assumed or promised to be liable for the payment of the indebtedness sued no. It was claimed by plaintiff that J. A. Berninghaus was acting as agent and trustee for the Indiahoma Refining Company, but we consider the evidence insufficient to sustain the contention.

The plaintiff drilled seven wells, all of them dry holes, except one, which was a light producer. The plaintiff incurred a total expense of approximately $170,000, in the development and operation of the lease. The account shows that the Home Oil Refining Company is credited with a payment of $50,000. It is claimed by the defendant in error that the indebtedness sued on accrued after the assignment to the St. Louis & Fort Worth Producing Company. The plaintiff was unable to get the Home Oil Refining Company to take over the management. He testified that the "Indiahoma people and the Home Oil Company" told him that they were going to organize a holding company, for the reason, he said, the Indiahoma Company did not do business in Texas and did not want to get into the state. But he admitted that he did not know of the assignments mentioned until the development was practically completed. There was evidence to the effect that the Indiahoma Refining Company was a St. Louis corporation, and that the St. Louis & Fort Worth Producing Company was a Texas corporation, organized as a holding corporation for the Home Oil Refining Company and the St. Louis & Fort Worth Producing Company. The letter from Berninghaus says that 50 per cent. of the stock of the St. Louis & Fort Worth Producing Company was owned by the Indiahoma Refining Company and 50 per cent. by the Home Oil Refining Company. The Home Oil Refining Company was dismissed from the case. Attachment was issued and levied on property of the St. Louis & Fort Worth Producing Company. A replevy bond for $50,000 was filed by the company with the American Surety Company of New York as surety. Judgment for $32,234.95 was rendered against the Indiahoma Refining Company, the St. Louis & Fort Worth Producing Company, and the American Surety Company of New York, who are the plaintiffs in error.

[1] The plaintiff insists that the defendant's affidavit, denying partnership, is insufficient to require proof because based on affiant's "knowledge, information, and belief."

The question was not raised below. We think the affidavit attached to the answer, for the purpose of verifying the allegations thereof, is a part of the pleading, the sufficiency of which as to a matter of form must be tested by exception and ruled on in the lower court in order to be considered upon appeal. Williams v. Bailes, 9 Tex. 61; Western Union v. Smith (Tex. Civ. App.) 130 S. W. 623 (2); Taber v. Eyler (Tex. Civ. App.) 162 S. W. 490 (4); Railway Co. v. Wall (Tex. Civ. App.) 165 S. W. 527 (5); Hightower v. Price (Tex. Civ. App.) 244 S. W. 652.

[2-5] The special agreement on the part of J. A. Berninghaus, trustee, to pay to the Home Oil Refining Company "one-half of the actual cost and expense of said lease" cannot be construed as a promise to pay such sum directly to plaintiff. Davis v. Vidal, 105 Tex. 444, 151 S. W. 290, 42 L. R. A. (N. S.) 1084. Berninghaus' contract to acquire a half interest in "all the rights and benefits of said contract" could not create a partnership liability against him or his alleged principal, the Indiahoma Refining Company, until executed. Millers Indemnity Underwriters v. Patten (Tex. Com. App.) 250 S. W. 154. The contract was entered into on October 16, 1919, and executed on October 25, 1919, when the assignment was delivered to Berninghaus, but on the same date he assigned his interest to the St. Louis & Fort Worth Producing Company. Hence he went out of the alleged partnership at the same time he entered it. Besides, the evidence is insufficient to show that he represented or was authorized to represent the Indiahoma Refining Company in buying and selling oil and gas leases. The mere fact that he may have been trustee did not confer on him the power to bind the cestui que trustent. Connally v. Lyons, 82 Tex. 664, 18 S. W. 799, 27 Am. St. Rep. 935. Nor would the fact that he was vice president be sufficient within itself. Railway Co. v. City of Sweetwater, 104 Tex. 329, 137 S. W. 1117. We find nothing in the record that would justify us in holding the Indiahoma Refining Company liable as a party to any of the transactions related.

[6] But we believe that the St. Louis & Fort Worth Producing Company is liable on the ground of partnership. When the Home Oil & Refining Company accepted from the plaintiff an assignment to one-half of the lease, under an agreement that each would bear one-half of the expenses of developing and operating the oil and gas lease, a mining partnership was created. The purchase by the St. Louis & Fort Worth Producing Company of the Home Oil Refining Company's interest in the partnership contract made the St. Louis & Fort Worth Producing Company a partner with the plaintiff (Freeman v. Huttig Sash & Door Co., 105 Tex. 560, 153 S. W. 122, Ann. Cas. 1916E, 446), and liable for one-half of the expenses thereafter in-

curred in the usual course of the partnership venture. Randall v. Merideth, 76 Tex. 669, 13 S. W. 576. It is true the St. Louis & Fort Worth Producing Company acquired the Home Oil Refining Company's interest in the partnership contract without the plaintiff's knowledge, but the plaintiff's consent was not necessary under the law applying to mining partnerships. In such case the delectus personæ—the right of the members to agree upon the persons to be admitted into the relation of mutual trust, as in ordinary trading partnerships—does not exist. Bissell v. Foss, 114 U. S. 252, 5 Sup. Ct. 851, 26 L. Ed. 126. By express contract plaintiff was given the management and authority to create an indebtedness for the development and operation of the lease, as shown by the agreement between plaintiff and the Home Oil Refining Company. The assignee bought with knowledge of the purpose of the association and the power of the managing agent. We think his liability is that of a member of a limited partnership. It is said by Thornton, in "The Law of Oil and Gas," that—

"It is a cardinal rule of all ordinary partnerships that one about to engage in a partnership enterprise has the right to select his partners; in such a partnership the delectus personæ has a part. But such is not the case in a mining partnership. In an ordinary partnership, if a new partner has been introduced, the old partnership is dissolved as to all the partners, where there is no agreement that it shall be continued. The conveyance of one partner of his interest to a stranger works a dissolution of the partnership. But such is not the case with a mining partnership, for a member of it may convey his interest to a stranger without dissolving the partnership, and the purchaser will become a partner in the enterprise, as much so as the vendor." Volume 1, p. 521, § 356.

In observing the distinctions between an ordinary partnership and a mining partnership it is pointed out in 18 R. C. L. 1201, § 106, that—

"Another distinction is that whereas a sale by a partner in an ordinary partnership dissolves it and compels a winding up and settlement of the business, in a mining partnership such a sale does not effect a dissolution but it continues with the owners as newly constituted."

Chief Justice Stayton of the Supreme Court of Texas, in the case of Randall v. Merideth, supra, had the following to say concerning the powers of the individual members of a mining partnership:

"It has been generally held that mining partnerships are nontrading partnerships, and the individual members of the firm without power to borrow money on the credit of the firm, unless the power be given otherwise than by implication for the ordinary nature of the business. * * * The first part of the charge given informed the jury that to make the act of one member of a mining firm binding on it the act must have been done in the usual course of business. This was correct."

Chief Justice Stayton also said that:

"If the power be habitually exercised by a partner and acquiesced in by the other members of the firm, it is but fair to conclude that the members of the firm intended it to be exercised." 76 Tex. 669, 13 S. W. 576.

By voluntary act the assignee acquired a one-half interest in "all the rights and benefits" of the partnership contract. The assignee permitted the improvement to be done at great expense for its benefit, after it became part owner of the lease. Without doubt the assignee would share in the production in the event of the discovery of oil and gas. When bills were sent to the assignee it did not deny liability but, with one excuse and another, deferred payment and promised investigation. The assignee enjoyed the benefits of the contract and ought to bear its part of the burden. In Burgan v. Lyell, 2 Mich. 102, 55 Am. Dec. 54, the Supreme Court of Michigan says:

"The plaintiff, by the procurement of Harvie, as appears by the case, labored for the company, in their mining operations, nine months and two days at $18 per month. In this labor of the plaintiff all the partners were interested, and in judgment of law all are presumed to have been cognizant of its performance, and to have derived at least some benefit from it; hence all are, as they should be, by every principle of justice, held equally responsible to the plaintiff for the payment of the services thus rendered. And as it regards their joint liability, it is a matter of no legal moment whether some of the partners were dormant in fact, or whether they subsequently assented to or dissented from the proceedings of those with whom they had intrusted the management of their company business; they would, nevertheless, be jointly liable to the plaintiff for his work."

The judgment of the trial court is affirmed, except as to the Indiahoma Refining Company. As to it, the judgment of the trial court is reversed and rendered.

Affirmed in part, and reversed and rendered in part.

## On Motion for Rehearing.

BOYCE, J. A reconsideration of the record has convinced us that the judgment of the trial court cannot be sustained on the grounds assigned in the original opinion, and that the judgment must be reversed and the cause remanded.

In the interest of brevity we will state generally our conclusions as to the legal principles that should control the adjudication of the rights of the parties, and then point out the reason why the application of these principles to the record will not sustain the judgment rendered.

[7-9] When Wood sold to the Home Oil & Refining Company a one-half interest in the lease, with the agreement that he was to proceed with the development of the lease for a certain period of time, and the Home Oil & Refining Company was to pay him at stated periods one-half of the expenses incurred in thus developing the property, said parties thereby became either partners or joint adventurers, engaged in a joint enterprise for their common benefit. The agreement for the management of the business was in the nature of articles of partnership or association. The Home Oil & Refining Company, after the business had been conducted under this agreement and expenses incurred, could not defeat payment because, on account of the fact that it was a corporation, it could not enter into a partnership. Miller's Indemnity Co. v. Patton (Tex. Civ. App.) 238 S. W. 244, 245 (5). The St. Louis & Fort Worth Producing Company came into this enterprise by purchase of a part of the interest of the Home Oil & Refining Company, taking an assignment of such interest in the original contract with Wood, and allowed Wood to thereafter continue to handle the property as under the original agreement with the Home Oil & Refining Company. While the St. Louis & Fort Worth Producing Company did not expressly assume the obligations of the Home Oil & Refining Company, it seems clear that the assignment was taken in contemplation of a continuance of the joint enterprise as originally launched and the St. Louis & Fort Worth Refining Company simply came in as one of the joint adventurers therein. It thereupon became bound on the original contract with Wood to reimburse him to the extent of its interest in the enterprise for expenditures thereafter made by him in the further development of the property. Bates on Partnership, §§ 216, 217; 20 R. C. L. pp. 983–985. It would not be liable in our opinion, for payment of expenses already incurred.

[10, 11] But the record will not sustain the judgment rendered for the following reasons: It is alleged and shown that the St. Louis & Fort Worth Producing Company acquired all of the interest of the Home Oil & Refining Company, in subdivisions 12, 13, 15, 18, 35, and 36, of the lease, and only one-half of the interest of the Home Oil & Refining Company in subdivisions 3, 6, 7, 8, and 11, thereof, the Home Oil & Refining Company retaining the remaining interest in the last-named subdivisions. It is not shown, either by pleading or proof, on what particular subdivisions of the lease the expenditures were made, and there is thus no basis for determining the extent of the liability of the St. Louis & Fort Worth Producing Company, for the expenses actually incurred by Wood since the liability of the parties interested in the enterprise for contribution to Wood for payment of expenses incurred by him would be several and in proportion to their respective interest in the enterprise. Chalk v. Collier (Tex. Civ. App.) 208 S. W. 973. The pleading is also insufficient, we think, in that it is not alleged that these expenses were incurred after the St. Louis & Fort Worth Producing Company came into the enterprise. In fact, the pleading was not drawn and the judgment of the trial court was not rendered on the theory of liability considered by this court, and which we think is the only theory on which the St. Louis & Fort Worth Refining Company would be liable to Wood. However, the petition set out the facts, and, with the exceptions herein stated would, we think, have been sufficient to sustain the judgment.

[12] It is suggested by plaintiff in error, the St. Louis & Fort Worth Producing Company, that Wood could not recover the expenses incurred by him in the joint enterprise without a dissolution of the association and a general accounting. It is true, as a general rule, that one partner may recover of another on transactions growing out of the partnership business only on general accounting and dissolution. This rule is not always applicable. It would not, we think, apply to a case of this kind, where the contract provided for the payment of such expenditures on the 10th day of each month after they are incurred. Bates on Partnership, §§ 911, 916. However the disposition of the interest of the Home Oil & Refining Company has complicated the situation; and the subsequent developments, as disclosed by the record, the enterprise having practically come to an end, present a situation that would make a general accounting appropriate, if not necessary.

[13, 14] The plaintiff attached a part of the personal property belonging to the joint enterprise, and it was replevied by the defendants. This fact would not, as defendant in error seems to contend, give him any right to a judgment on the debt sued on that he would not otherwise have had. The property belonging to the joint enterprise might, in a general accounting, be chargeable with an equitable lien to secure the repayment of the expenditures made by Wood in the conduct of the business. Bates on Partnership, § 820; 20 R. C. L. p. 1030, § 273. Whether this lien would be affected by the attachment of the property we need not now consider.

We may have been in error in holding that the Indiahoma Refining Company was not bound by the contract made with Berninghaus, trustee. However, as none of the expenditures were made while the company was in the enterprise, it would not, in our opinion, be liable unless a different state of facts should be developed on another trial.

The judgment of the trial court will be reversed as to the plaintiffs in error, and the cause remanded for a new trial.