## DUNN et al. v. TENNANT.
### No. 11671.

Court of Civil Appeals of Texas. Dallas.
Jan. 6, 1934.

Fred J. Dudley, of Dallas, for appellants.

Muse & Muse and J. C. Muse, Jr., all of Dallas, for appellee.

JONES, Chief Justice.

This is an appeal from an order of the trial court, refusing to grant a temporary writ of injunction against appellee, Roger L. Tennant, as receiver of the Indian State Oil Company. The following are the necessary facts:

The original suit, in which the receiver was appointed, was instituted in the district court in Dallas county by Stidham & Thrasher against Indian State Oil Company to recover an alleged indebtedness, secured by a mechanic's lien against the property of the oil company. The indebtedness was incurred under a contract of plaintiffs with the defendant to drill an oil well on the Lum Taliaferro 5½-acre lease in the East Texas oil field, and on allegations of insolvency, appellee was appointed receiver of the defendant oil company, and in such capacity has had charge of such lease. After the suit was filed and the receiver appointed, what is known as the Sheegog intervention was filed, which impleaded a number of defendants, including Mrs. Emma Louisa Dunn, one of the appellants herein, as unit holders in the lease. After being thus impleaded, Mrs. Dunn, joined by her husband, filed an intervention, alleging that she was the owner of certain units made to her by a contract entered into with the Indian State Oil Company, under which she had paid $5,000 and was to receive $25,000 out of the sale of oil from 5/48 of the oil, when obtained from the well on said lease. It appears from the record that the Imperator Oil Corporation was the previous owner of 7/8 of the lease, and that it had transferred to the Indian State Oil Company a ½ interest in its 7/8 interest, the inference being that the remaining 1/8 represented the royalty interest in the lease. In other words, at the time Mrs. Dunn acquired her unit interest in the property, 1/2 or 7/16 working interest in the lease was owned by the Imperator

Oil Corporation, and a 7/16 working interest was owned by the Indian State Oil Company. Mrs. Dunn's contract for her interest in the oil, run from the well, antedated the Stidham & Thrasher suit and the appointment of the receiver, but her intervention was filed after the appointment of such receiver. The record also reflects that there were approximately 300 unit holders in the property, presumably on the same basis of Mrs. Dunn.

The consideration moving to the Imperator Oil Corporation from the Indian State Oil Company, for the latter's interest, was that the latter company was to drill two wells and erect certain storage tanks. At the time of Mrs. Dunn's contract for her interest in the lease, there was no producing well on the lease, but one well, subsequently known as Tennant No. 1, had been drilled to the oil sand by Stidham & Thrasher, but had not been brought in, because of the failure of the Indian State Oil Company to meet its contract payments. The other well had been spudded in, but had not been drilled. The title to the lease was not good and required much work, extending over a period of about three months· to perfect it. To protect the creditors and the unit holders of the Indian State Oil Company, as well as to secure title to the lease, it was necessary to complete well No. 1 and to drill the other well, in order to complete the purchase consideration of the lease. Practically no money came into the possession of the receiver when he was appointed, but under the authority of the court, exercised in the interest of all creditors and unit holders, the court created an indebtedness against the property, sufficient to complete well No. 1 and to drill well No. 2. This was done, the two wells completed, and their operation carried on by the receiver through the orders of the court.

The court had decreed, by proper orders prior to the application for injunction, that the above-mentioned items of indebtedness were a prior claim, on the proceeds of the oil, to the claim of appellants and to the claims of other unit holders, and had directed the receiver, by such orders, to apply the income from time to time on such items of indebtedness until they were discharged. It is true, as alleged by appellants, that the receiver was disposing of the proceeds of the oil wells and applying same without regard to the claim of appellants and other unit holders, but in doing this the receiver was acting under final orders of the court, from which no appeal has been prosecuted. Appellants' claim as a unit holder has never been passed upon by the court, but an adverse recommendation on such claim by the master in chancery has been heard by the court on the objection of appellant to such report, with the result that same was referred back to the master in chancery for a fuller and more complete report, on which the court will act.

There is no complaint by appellants that the receiver is not performing to the letter the final orders of the trial court, in reference to the payment of the various items of indebtedness decreed by the court to be prior claims to that of appellants and of other unit holders. Appellants' contention, when reduced to its last analysis, is that the trial court should ignore or set aside prior orders, that have become final, and to restrain the receiver from carrying out such orders. The special question for review is, Should a court sitting in equity restrain a receiver under such court from carrying out its judgments and decrees that had been theretofore pronounced, from which no appeal has been prosecuted?

A receiver is under the direct supervision of the appointing court. When such court has duly entered an order after hearing, as was done in this case, in reference to all of the orders herein mentioned, directing the receiver to execute such order, it is the bounden duty of the receiver to comply therewith, and the parties privy to such orders are bound by same. If parties deem themselves aggrieved by an order, they should move to set it aside and, in case of an adverse ruling, appeal therefrom, and not ask the court to enjoin that which, in effect, is the action of the court. Texas Co. v. Honaker et al. (Tex. Civ. App.) 282 S. W. 879, and Id., 115 Tex. 509, 283 S. W. 1071. The latter citation is a memorandum opinion of the Supreme Court on the denial of a writ of error to the judgment of the Court of Civil Appeals in the same case. The reason for denying the writ of error in the per curiam opinion is thus stated: "The petition for writ of error is refused. It is a well established rule that an injunction will not be granted to say proceedings in the same court of equity, either upon the application of parties to the proceedings sought to be enjoined or of others. High on Injunctions (4th Ed.) vol. 1, § 52. The refusal of the trial judge to grant the injunction was therefore in accordance with the established principles of equity."

Then again, it readily appears that, if this court were to set aside the order of the trial court, refusing to grant the injunction, and in lieu thereof grant the injunction as prayed for, thereby impounding the proceeds of the oil well as they are paid in to the receiver, it will open up the field for other unit holders to take similar action, destroy the final orders theretofore entered by the trial court in the receivership proceedings, and very greatly hamper the trial court in the administration of the estate in its hands through the receiver. Such a course this court is not authorized to take. Nothing herein said shall prejudice appellants in the establishing of their claim.

It necessarily follows that, in our opinion, the judgment of the lower court should be affirmed and the interlocutory order of this court, heretofore entered, directing the receiver to retain $2,500 in his possession, set aside, and it is so ordered.

Affirmed.