GOODLOE & MEREDITH V. JODIE P. HARRIS.

No. 6526. Decided June 3, 1936.
Rehearing overruled July 1, 1936.
(94 S. W., 2d Series, 1141.)

*Scarborough & Fly,* of Abilene, for plaintiffs in error.

In a partition suit under the statutes of Texas all issues of title may be determined in the same case, and the parties jointly owning the mining property and jointly operating it, the respective parties sharing the cost of operation, constitute a mining partnership which, as any other partnership, may be dissolved at will. 47 C. J., 306, sec. 96; Banks v. Blake, 143 S. W., 1183; Gutheridge v. Gutheridge, 161 S. W., 892; Gill v. Baird, 32 S. W. (2d) 941; Gutierrez v. Martinez, 37 S. W. (2d) 833.

*F. L. Kuykendall,* of Austin, and *J. R. Creighton* and *W. H. Penix,* of Mineral Wells, for defendant in error.

MR. JUDGE TAYLOR delivered the opinion of the Commission of Appeals, Section B.

A. S. Goodloe and J. D. Meredith, plaintiffs in error, sued Jodie P. Harris and The Texas Company for partition of an oil and gas lease and certain equitable adjustments under a contract to be later set out. The court upon trial with the aid of a jury rendered judgment, the terms of which will be later referred to. Defendant Harris prosecuted an appeal from the judgment and the Court of Civil Appeals reversed and remanded the cause. 58 S. W. (2d) 156. Plaintiffs bring error.

Plaintiffs base their claim of joint interest with defendant in the lease and other alleged rights, upon the written assignment to them by Wm. Hix of all the property and contract rights of himself and R. E. Hubbard under a written contract, which, omitting immaterial provisions, reads:

"This contract and agreement made by and between Jodie P. Harris hereinafter called party of the first part, Wm. Hix and R. E. Hubbard hereafter called party of the second part:

### WITNESSETH

"By virtue of a contract made by and between The Texas Company and Jodie P. Harris, That he is (party of the first part) the owner of an Oil and Gas lease located in the Southeast corner of Section 57, East Texas Railroad Company Survey, Shackelford County, Texas, being the Southeast one-fourth of said Section No. 57, containing 160 acres, more or less.

"1. Second party agrees to drill a well to a depth of 1200 feet unless Oil and Gas is found at a lesser depth and pay all expenses which might occur by drilling said well, furnish all equipment, tools and etc. except first party agrees to furnish one (1) string of Eight (8) inch pipe approximately eight hundred feet (800) and assist Second party in securing two (2) dry hole 'letters' in the amount of $250 each, being a total of ($500).

"2. Upon completion of said well first party agrees to execute and assign to second party an undivided 8/16 interest in the above described lands.

"3. Second party shall have full control—of the operations on this lease and first party agrees to pay his share of the expenses that occur from operating said lease. Second party shall furnish first party with an itemized statement of all bills on or before the 20th day of each month.

"4. Second party agrees to in case of a dry hole that he will plug said well at his own cost and expense and return to first party all eight-inch pipe recovered from said well.

"5. Second party shall carry workmens compensation insurance covering all liability to his employees during the drilling said well and first party shall not be liable for any damage to or destruction of second partys property while the same remains on the premises.

"6. Should second party fail to carry out and complete this contract, then first party shall have the right to take possession of the property and the well and all equipment and tools of second party and continue the drilling of said well to completion, and shall have a lien thereon to secure the payment of

all damage sustained by virtue of said second party's failure.

"7. In case of disagreement as to any matters relating to operations on said lease which cannot be settled amicably, then, upon five (5) days written notice given by one party to the other such matters in disagreement shall be submitted to a board of three arbitrators. Each party hereto agrees to pick one arbitrator within ten days after such notice is given. The third arbitrator shall be chosen promptly by two so appointed, all three arbitrators shall be disinterested practical oil operators.

"A. Any decision rendered by a majority of the board of arbitrators shall be final and binding upon the partys hereto, and adjustments shall be made in conformity with their award.

"8. It is expressly understood between the partys hereto that no partnership relation exists by reasons of this agreement and that neither party hereto shall be liable for bills incurred by the other.

"This agreement shall be binding upon the parties hereto, their heirs, successors and assigns."

The contract was signed by Jodie P. Harris as party of the first part and Hix and Hubbard by Wm. Hix as party of the second part.

The assignment referred to reads:

"WHEREAS, by contract between Jodie P. Harris and Hix & Hubbard, a co-partnership, composed by Wm. Hix and R. E. Hubbard, Jodie P. Harris assigned to Hix & Hubbard the southeast quarter of Section 57, East Texas Railroad Company surveys, in Shackelford County, Texas; said contract provided that Hix & Hubbard should drill a well to a depth of 1200 feet, unless oil and gas should be found at a lesser depth in paying quantities, and they did drill the well and did discover oil in paying quantities, and oil is now being produced in paying quantities.

"Hix & Hubbard agreed to drill a well at their own expense, which they did do. Harris agreed to furnish one string of 8″ pipe, which he did do. Harris further agreed that when the well should be completed that he would execute an assignment to Hix & Hubbard to 8/16 interest, and

"Whereas, the well has been completed and demand has been made upon Harris, and he has refused to execute the assignment, and whereas Hubbard has conveyed his interest to Hix and Hix is now the sole owner.

"Now therefore, know all men by these presents that I, Wm. Hix, for and in consideration of One Dollar, and other

valuable considerations, have this day sold, transferred and assigned to A. S. Goodloe and J. D. Meredith, all of our right, title, and interest in and to the property above described, including all real and personal property and in and to our rights under and by virtue of our contract with Jodie P. Harris and the said Goodloe and Meredith and hereby substituted to all the rights and benefits to which we are entitled, and we expressly contract and agree that the said Goodloe and Meredith are hereby expressly authorized to enter into said premises, and to operate the same in and under the said contract between us and Jodie P. Harris."

R. E. Hubbard by conveyance dated December 2, 1930, sold, released and quitclaimed to Hix all of his right, title and interest in and to the land, and the privileges and appurtenances thereto.

Defendant Harris' pleadings are devoted largely to a statement of the terms and conditions upon which he procured the leasehold estate in question from The Texas Company, his obligations in connection with the lease, his negotiations with Hix with respect thereto prior to signing the contract above set out, the alleged fraudulent misrepresentations made by Hix in procuring the contract, the damages and loss of profits in consequence thereof and in consequence of the alleged failure of Hix to drill the well in a workmanlike manner. He alleged also that the written contract embodied only a part of the agreement between him and Hix. He further stated in his answer that he did not know what amount, if any, should be tendered plaintiffs, but offered to do equity. In conclusion, in addition to praying for general and equitable relief, he asked that the contract be rescinded, that he be decreed to be the owner of the lease and all property used in connection therewith, and that the cloud cast upon his title be removed and plaintiffs permanently enjoined from interfering with his management and control of the lease. A fuller statement of the pleading is made in the opinion of the Court of Civil Appeals.

The trial court submitted only three issues to the jury. These were directed to ascertaining the amount of money expended by Hix and the plaintiffs in operating the well after oil was found. No objections were made by defendant to submission of the issues referred to and no request was made for the submission of any other issues.

The judgment of the trial court awards plaintiffs and defendants respectively their undivided interests in the leasehold estate measured by the terms of the contract, and de-

crees that The Texas Company's interest is a 1/16th overriding royalty; also it prorates in like manner the operating expenses to be borne by plaintiffs and defendant, decreeing that plaintiffs bear 8/15ths thereof and defendant 7/15ths. The intervenors are granted judgment and foreclosure as prayed.

■ The judgment further provides that plaintiffs have recovery against defendant for one-half of the total amount found by the jury to have been expended by Hix and plaintiffs in operating the well after oil was found. The correct amount for which judgment should have been rendered consistent with the prorating of interest between the parties, is 7/15ths of the total amount of such expenses, to wit, $372.50.

The other provisions of the judgment relate to the casing in the well, the rights of the intervenors, the sale of the property, and the winding up through receivership of all matters growing out of the joint operation of the parties under the contract.

We have concluded after a careful consideration of the record that the judgment of the trial court should be affirmed, except as to the minor provision pointed out.

It appears that Hix and plaintiffs had already completed the drilling of the well in question and that plaintiffs, as assignees of Hix and Hubbard, had begun further operations when defendant repudiated the contract.

■ The Court of Civil Appeals correctly holds the contract was assignable; hence the rights of the parties should be measured by the contract terms, which had already been substantially executed when dissension arose among those jointly interested in the venture. The contract was executed so far as the vesting of plaintiffs' interest in the lease is concerned when the well was completed. The right to an 8/16th interest in the mineral estate did not depend solely upon a formal conveyance by defendant, but rather upon a completion of the well; Munsey v. Mills & Garrity, 115 Texas, 469, 283 S. W., 754; Wagner Supply Co. v. Bateman, 118 Texas, 498, 18 S. W., (2d) 1052; and defendant's refusal to execute the conveyance constituted no bar to plaintiff's right to recover their undivided interest. Plaintiffs were not claiming title, but an undivided interest.

■ There is no doubt that a joint owner or claimant of an interest in real estate may compel a partition by the other joint owners or claimants, whether such interest is held by lease or otherwise. Art. 6082, Vernon's Ann. Tex. Stat.; Hen-

derson v. Chelsey, 116 Texas, 355, 292 S. W., 156; Id. (Court of Civil Appeals), 273 S. W., 299. The pleadings of defendant, which related solely to charges of fraud and defective workmanship on the part of Hix, were not such as to tender an issue of title. The Court of Civil Appeals erred in holding the pleadings raised such an issue.

■ The burden rested upon plaintiffs to establish their interest in the property sought to be partitioned. Laferiere v. Richards, 28 Texas Civ. App., 63, 67 S. W., 125 (writ ref.); Broom v. Pearson, 200 S. W., 191.

The testimony is uncontroverted that the well was completed, had been cleaned out at considerable expense, and that a pump had been installed by Hix and his assignees when dissession rendered further joint operation by the claimants impossible. Defendant himself testified in effect that he acquired the lease shortly before he met Hix, upon condition that he drill a well on the north 80 acres and that he recondition a well on the south 80 acres; and that nothing was ever paid for the half of the lease finally acquired, except the well drilled by Hix. The testimony touching the amounts paid by plaintiffs in connection with the operations after oil was found is conflicting. The conflicts were resolved by the three issues submitted by the trial court. The material facts relating to the rights of intervenors present no conflict.

■ It is well settled that the obligations and equities between the parties to an action to partition property in which they are jointly interested may be adjusted and enforced by the courts in the partition suit. De La Vega v. League, 64 Texas, 205; Barkley v. Stone, 195 S. W., 925 (writ refused); Art. 6086, Vernon's Ann. Tex. Stats. The judgment of the trial court under the record before us correctly disposes of the matters involved except as to the amount of the money judgment awarded plaintiffs against defendant for his pro rata part of the operating expenses. The judgment is so reformed as to substitute for that amount the sum of $372.50.

We have considered all of the assignments contained in the brief filed by the defendant in the Court of Civil Appeals. They relate chiefly to whether the contract sued upon was assignable, the failure of the court to submit issues determinative of title, the pleadings of intervenors, the provision of the judgment with respect to the casing in the well, the directions given the receiver with respect to making payment

of operating expenses, and the court's rulings upon the admissibility of testimony.

None of the assignments point out reversible error. The testimony concerning which complaint is made, as well as much that was admitted, tended to vary or add to the contract which was substantially executed as to all matters material up to the time of the repudiation of the contract by defendant; or related to the allegations of fraud and the failure of Hix to drill the well in a workmanlike manner. Defendant, under the facts testified to by him, was not entitled to a rescission of the contract, and this is the only defense he pleaded.

The judgment of the Court of Civil Appeals is reversed and that of the trial court is affirmed except as to the amount of the money judgment rendered for plaintiffs against defendant, which is here determined by mathematical calculation to be $372.50.

The judgment as reformed is affirmed.

Opinion adopted by Supreme Court June 3, 1936.

Rehearing overruled July 1, 1936.