## INDIAN STATE OIL CO. OF TEXAS v. McCUTCHEN et al.

### No. 14636.

Court of Civil Appeals of Texas.
Fort Worth.

Oct. 20, 1944.

Rehearing Denied Nov. 17, 1944.

C. H. Milliken and J. O. Hughes, both of Fort Worth, for appellant.

J. C. Muse, Jr., and Gabe P. Allen, both of Dallas, for appellee Roger L. Tennant.

Donald V. Yarborough, of Dallas, for appellees Katherine Lain, John White, and Edna White.

O. D. Montgomery, of Dallas, for appellee C. W. McCutchen.

McDONALD, Chief Justice.

This appeal is from a judgment of one of the District Courts of Dallas County, entered in a receivership suit which began in the year 1931. It appears from the record that the Indian State Oil Company, the appellant here, became insolvent, and that in the year 1931, "on the petition of Stidham & Thrasher, Roger L. Tennant was appointed Receiver of the Indian State Oil Company of Texas and all its properties." Tennant took possession of certain oil properties, as receiver, and developed them by drilling oil wells and operated them up to and including the time of the judgment appealed from. Appellant does not challenge the validity of the appointment of the receiver, or his authority to develop and operate the properties.

The transcript filed here obviously does not purport to cover all the proceedings that have been had in the receivership action. Apparently only such pleadings and orders have been included in the transcript as have been considered material to the issues raised on this appeal.

The first instrument shown in the transcript is the petition in intervention of R. W. Sheegog, filed on December 28, 1931. The petition recites that the intervener adopts each and every part of the plaintiff's first amended original petition (which is not included in the transcript), and complains of the parties named as plaintiffs and defendants in said plaintiff's petition, and also complains of more than two hundred other persons, setting out their names. Complaint is also made of all unknown claimants and owners of the lands described in the plea. The plea alleges that the parties collectively own certain described properties, and describes assignments of interests in such properties which had been made by the Indian State Oil Company in favor of a large number of persons whom we shall hereafter call unit holders, and attaches copies of the forms of two of the assignments used. The plea in intervention describes in detail the transactions had between the parties, the effect of which may briefly be said to be that the Indian State Oil Company sold to the unit holders certain undivided interests in the properties described, with the result that the Indian State Oil Company and the unit holders thereafter became the owners, as tenants in common, of the properties. The plea also alleges that Tennant has been appointed as receiver, and "has been given full power, possession and control over the property of said company with authority to operate same under order of the Court." The plea in intervention seeks a continuation of the receivership. The prayer is that the defendants be required to appear and answer, and that the interests of the parties in the property be adjudged incapable of partition in kind; that the interests be ordered sold; that the receiver be appointed for all parties so far as they may own or claim any interest in the properties; that the receiver operate the properties, and sell the oil produced therefrom, as well as the properties themselves; and that upon final hearing the court enter judgment finding and determining the interests of all claimants in the property, and directing the proper partition of the properties and the distribution of proceeds of sales thereof, the petition concluding with a prayer for general relief.

The Indian State Oil Company is an unincorporated joint stock company, organized in 1931, under what are now articles 6133 et seq., Vern.Tex.Civ.St.

The next instrument in the transcript, following the Sheegog plea in intervention, is a pleading purporting to be that of C. W. McCutchen and several other persons, filed on April 12, 1941. The petitioners in this pleading describe themselves as unit holders under assignments of interest made to them by the Indian State Oil Company, and allege that as such they own and are interested in the subject matter of the receivership suit. It is recited that the application, as it is called, is made for and on behalf of themselves, as well as all other unit holders similarly situated, etc. It is alleged that the assignments of interests each conveyed a one two-thousandth interest in certain properties described in the receiver's final report. The pleading continues in a substance to allege that under the terms of the assignments the Indian State Oil Company obligated itself to bear certain of the costs of developing the properties; that it did not do so; that the receiver paid such costs from the funds coming into his hands as receiver; and that in the final adjustment of the rights and claims of the unit holders and the stockholders of the Indian State Oil Company, proper and equitable adjustments should be made; and that an equitable lien should be decreed upon the interests of such stockholders to secure the unit holders in the repayment to them of the moneys which the receiver had so used in the discharge of liabilities and obligations of the Indian State Oil Company. The prayer is that the application of unit holders be heard "in conjunction with the Receiver's final report and the application of Z. J. Spruiell, Trustee, et al, for partition and sale of the 5½ acre Lum Taliaferro lease (one of the properties involved)"; that the court determine the amount to be charged against the stockholders of the Indian State Oil Company; that the amounts found be decreed to constitute equitable liens; and for general relief.

These unit holders filed an amended application a few days later, setting up somewhat the same matters.

Upon answer of the Indian State Oil Company, the trial court entered an order sustaining a plea in abatement, decreeing in effect that the persons named in the application could not maintain a class action in favor of all the other unit holders; and later all of these persons, except McCutchen, filed a petition dismissing their application.

R. W. Sheegog died prior to the judgment herein appealed from, and according to the judgment, C. W. McCutchen was substituted for Sheegog as his successor in title. In his third amended plea McCutchen alleges that Sheegog was the owner of five units during his lifetime, and that McCutchen is now the owner of them by virtue of Sheegog's will. In the prayer the petitioner seeks to have the petition heard in "conjunction with the Receiver's final report and the Master's report and the intervention of R. W. Sheegog for partition."

On August 5, 1943, Mrs. Katherine Lain, John White and Edna White filed a plea seeking, among other things, an adjustment for the moneys disbursed by the receiver in payment of obligations of the Indian State Oil Companay.

Judgment was rendered by the court without a jury. The judgment is lengthy. Its findings and decrees may be summarized as follows: The case came on to be heard in August, 1943. The receiver Tennant came in person and by his attorneys, and presented his report and final account. The Indian State Oil Company appeared by its attorneys. McCutchen, Mrs. Lain, John White and Edna White appeared by their attorneys, as did certain other named parties not involved in the appeal. Referring to the large number of unit holders, the judgment names them, and then recites that they, "although properly before the court by intervention, came not but wholly made default, with the following exceptions," naming Mrs. Lain, Edna White, Sheegog, McCutchen, and certain others who from the record appear to have been claimants of the stock of the Indian State Oil Company. The judgment then recites that all parties announced ready for trial in all undisposed-of issues, in the cause. Certain exceptions presented by Indian State Oil Company, and an exception to a certain report of the receiver, not material on the appeal, were overruled. The issues between certain persons claiming to own the stock of Indian State Oil Company were severed and set up for trial in a separate cause. The judgment finds that 462 units of ownership were sold by Indian State Oil Company to the unit holders, whose names, together with the number of units sold to each, are set out in the judgment. The properties are described. The only property now in the hands of the receiver consists of a seven-sixteenths working interest in a certain 5½ acre lease in Rusk County, on which are two producing wells, together with certain equipment, and the sum of $5,774.84 in cash. One of the wells is charged with an unpaid portion of an oil payment. Receipts and disbursements of various items of money are set out. Findings are made that certain proportions of certain disbursements and receipts were applicable to the interests of the unit holders, others to the interests of the Indian State Oil Company. The judgment finds that the Indian State Oil Company is indebted to the unit holders, collectively, as of July 31, 1943, in the sum of $19,820.17, that such moneys have accrued to the individual unit holders from their proportionate part of the oil runs and sales of capital assets, but which funds were diverted and applied by the receiver, under orders of the court, in discharge of debts, claims, and costs established by orders of the court and charged against the Indian State Oil Company. It is found that such $19,820.17 is a "prior debt, claim and lien against all of the property of the Indian State Oil Company" and against its share of the oil runs accruing from the wells in question, and that the unit holders are entitled to have said lien fixed and established against the Indian State Oil Company's 1538/2000ths interest in said lease, or the money derived from the operation or sale thereof. After other findings not material here, the judgment concludes with its decrees, as follows: Title to the 7/16ths working interest in the 5½ acres lease in question is vested in the Indian State Oil Company and in the unit holders collectively as follows: 1538/2000ths in the Oil Company, subject to a certain oil payment which is not involved in the appeal, and 462/2000ths in the individual unit holders. Judgment is awarded to the unit holders collectively for $19,820.17 against the Indian State Oil Company, and an equitable lien to secure same is fixed against the Indian State Oil Company's 1538/2000ths interest in the property and the income therefrom. The lien is ordered foreclosed. The receiver is ordered after notice to the parties to sell the 7/16ths working interest in the 5½ acres lease together with the wells and the property and equipment thereon. The receiver is ordered to distribute the moneys received from the sale of the property and other moneys collected from production, to the unit holders and to the Indian State Oil Company, subject to the

charges assessed against them in the judgment, to be made in the proportions fixed in the judgment. The report and final account of the receiver is approved and confirmed. Other portions of the judgment are not involved in this appeal.

Upon request of the appellant, Indian State Oil Company, the trial court filed findings of fact and conclusions of law. Appellant's points of error do not challenge the sufficiency of the evidence to support the trial court's findings of fact, unless it be the finding that the property should be sold, hence, with this exception, we shall accept the findings of fact as they appear in the judgment and in the separate findings of fact.

Under the first point of error it is contended that the trial court erred in rendering judgment in favor of the unit holders collectively other than McCutchen, Lain and White against Indian State Oil Company for the $19,820.17, on the ground that the unit holders have no pleadings in the case upon which such judgment can be based, and on the ground that the unit holders are not parties to the "present suit."

■ As we have said, the transcript obviously does not show all the proceedings that have been had in this long lasting receivership. The burden is upon appellant to show that error has been committed, and every reasonable presumption will be indulged in favor of the ruling below. We shall presume that the receiver was properly appointed, and that all his acts were done under proper authority, since there is neither contention nor showing to the contrary. The judgment recites that the unit holders were properly before the court by intervention. In one of the pleadings filed by appellant, it is alleged as a fact that "each and every one" of the unit holders had theretofore appeared in the suit in hearings before the master in chancery and presented their assignments of interests, and had their claims adjudicated. The Sheegog intervention made the unit holders parties. It is clear that the unit holders were parties to the suit at the time the judgment was rendered. There do not appear in the transcript any pleadings filed by the unit holders which specifically seek judgment for the $19,820.17 which was expended by the receiver in payment of claims that were chargeable against the Indian State Oil Company. The condition of the record before us is consistent with the supposition that there were no such pleadings, and we shall treat the matter as if it were positively shown that the unit holders filed no pleadings other than such as were necessary to show that they were, severally, the owners by assignment of the units or undivided interests conveyed to them by the Indian State Oil Company. As we construe the pleadings and the brief and arguments of the Indian State Oil Company, it does not seriously charge that the unit holders were not made parties by the Sheegog intervention, or that they did not appear in the suit and establish ownership of the interests in question in hearings conducted by the master in chancery. The heart of the contention made by appellant here is that it was necessary, in order for the court to render judgment in favor of the unit holders for the $19,820.17, that the unit holders have pleadings asking for such relief.

■ In our opinion this contention is not well taken under the facts and circumstances of this case.

From the fact findings of the trial court, it appears that the Indian State Oil Company was organized as a joint stock company in 1931. Its capital stock was owned by a few persons, and was not offered for sale. By written assignments it sold 462 fractional interests or units in certain leases or interests in leases which it owned or purported to own. Included was the lease described in the judgment. By these written assignments the Indian State Oil Company obligated itself to complete the drilling of a certain number of oil wells without cost to the unit holders. By these assignments the unit holders became the owners of 462/2000ths interest in all but one of the properties, and of 462/500ths in one property. The only property in the hands of the receiver at the time of judgment was a 7/16ths working interest in a 5½ acre lease in Rusk County, on which were two wells. Without detailing the collections and disbursements made by the receiver, it is enough to say that the court found that he had paid, out of moneys collected by him, certain amounts which were chargeable against the Indian State Oil Company by reason of its obligation under the assignments to drill wells without cost to the unit holders. When the receiver was appointed one well had been commenced, a large amount of money was owing on it, and there was no money on hand. The receiver completed the well, then drilled another, and had money on hand at the

time of judgment, but not enough to reimburse the unit holders for the amounts which the receiver had expended in payment of the Indian State Oil Company's obligations. The court found that at the inception of the receivership "the Indian State Oil Company of Texas had breached all of its obligations under its assignments and agreements with the individual unit holders." The claims of the unit holders were submitted to and heard by the master in chancery, and his report fixing and establishing the claims was adopted and established as the judgment of the court. Two attorneys were appointed by the court to represent the interests of the unit holders as a class.

In reaching our conclusions, we do not presume as a basis therefor that the claims of the unit holders with respect to the moneys expended by the receiver were submitted to and determined by the master. While the record is none too clear, we shall assume for the purposes of this opinion that the only claims submitted to the master were the claims of ownership of the 462 units. In other words, the master investigated and determined only the ownership of the 462 units.

Whatever may have been the nature of the receivership suit as it was first filed, it seems clear to us that the Sheegog intervention was sufficient to bring into the suit the question of partition of the properties involved. The unit holders were named therein as parties, and the judgment of the court finds that the unit holders were properly before the court by intervention. The findings of fact recite the names of the unit holders "who have intervened or been impleaded herein." By order of the court McCutchen was substituted for Sheegog as a party.

The trial court had pending before it for many years a receivership of oil properties. The property was owned by numerous persons. Under the written assignments the Indian State Oil Company was given the right to operate the properties "so long as development and operation of said properties are conducted in an efficient manner." Appellant had breached all of its agreements with the unit holders at the time of the appointment of the receiver. The receiver developed and operated the properties, and used many thousands of dollars received from the operations in discharging items that were chargeable against the Indian State Oil Company under its agreement with the unit holders. The day came for the receiver to wind up the receivership, and for the court to order disposition of the property owned in common by the unit holders and by the Indian State Oil Company. The ownership of the property, or rather, the ownership of the units, had been established, and is not under attack here. The court had before it the assignment which obligated the Indian State Oil Company to fulfill certain drilling obligations. Sheegog had sought a partition of the property, and had brought in all the owners as parties. The receiver filed with the court a report which showed what moneys he had collected, what moneys he had expended and for what purposes, and what he had on hand. Three of the unit holders specifically sought an adjustment of equities with respect to the moneys paid in discharge of the Indian State's obligations. Under these circumstances, we do not see that it was necessary for all of the unit holders, or a few of them on behalf of all, to file any further pleadings in order to become entitled to a proper distribution of the assets of the property in custodia legis. It was incumbent upon the court and the receiver to distribute it to those who had been established as the owners of it, and in the final judgment of partition it was proper for the court to adjust the obligations and equities of the interested parties.

"At a very early date courts of equity assumed jurisdiction in cases of partition, and even after partition at common law was extended by statute to joint tenancies and tenancies in common, the remedy in the law courts was still so narrow and imperfect that the jurisdiction of equity in partition soon became almost exclusive. * * * In this state partition by suit, whether brought under the statute or without the aid of the statute, does not proceed independently of the rules of equity. Article 6106, * * * expressly provides that no provision of the statute shall preclude partition in any other manner authorized by the rules of equity and that the rules of equity shall govern in proceedings under the statute in all things not provided for therein." Thomas v. Southwestern Settlement & Development Co., 132 Tex. 413, 123 S.W.2d 290, 296.

"It is well settled that the obligations and equities between the parties to an action to partition property in which

they are jointly interested may be adjusted and enforced by the court in the partition suit." Goodloe & Meredith v. Harris, 127 Tex. 583, 94 S.W.2d 1141, 1144.

■ Appellant does not argue that it did not in fact owe the obligation to drill the wells at its own expense, nor does it dispute the fact that the receiver disbursed moneys belonging to all the unit holders to discharge obligations which were chargeable against appellant. In its brief appellant suggests that many of the unit holders are dead, or that they can never be found, and will likely never call for the money due them. But these facts would not authorize the receiver to pay over money to appellant which in fact belonged to other parties to the suit. If there is to be an escheat, it will be to the State, and not to appellant.

As between the receiver and the appellant, an accounting is proper, and the moneys paid out by the receiver are properly chargeable against the funds finally to be paid by the receiver to appellant, whether or not the other unit holders filed pleadings asking that it be done. The judgment of the court awards to the appellant all that it is entitled to receive. The appellant will receive its proper share, after deducting that which is due after proper accounting with the receiver, and it becomes immaterial, so far as appellant's rights are concerned, what is done with the moneys due to other owners of the property.

The judgment is not against the individual stockholders of the Indian State Oil Company. Tennant appears to be the receiver of the Company, as well as the receiver of the properties owned by appellant and the unit holders, and it appears that appellant owns no property except that in suit. The judgment in favor of the unit holders for the $19,820.17 is in effect, therefore, an adjustment of equities between the owners of the property, and is an incident of the final partition and distribution of the property or its proceeds.

■ This is not a case where one of the owners seeks reimbursement for moneys he has paid out for improvements, taxes, and the like. Here the property had been in the hands of the court. The court, through the receiver, had used money belonging to all in handling the property. Some of the money paid out by the receiver was chargeable against the unit holders, some against the appellant. The receiver, in making his final accounting, owed the duty of balancing accounts so that each party would be credited with his proportion of the money received, and charged with such disbursements as were properly chargeable against him. The court owed the same duty of accounting to the owners in rendering final judgment disposing of moneys on hand and to be collected from sale of the property. It would have been inequitable for the court to have done otherwise with respect to funds that had been collected and disbursed, not by the parties themselves, but by the court through the receiver.

As against any complaint that has been made here, the judgment appears to award appellant all that it is entitled to. It will receive its share of the proceeds of the operation and sale of the property, after being charged with the expenditures which are chargeable against it. Appellant has failed to demonstrate on appeal that it has suffered any legal harm in the judgment rendered by the trial court.

Our views appear to us to be in harmony with the principles announced in Universal Credit Co. v. Vance, Tex.Civ. App., 117 S.W.2d 508, writ dismissed; and Ryan v. Hays, 62 Tex. 42.

■ Appellant also suggests that the Sheegog intervention is insufficient in that it does not make all owners of interests in the 5½ acre lease parties to the partition suit. In the first place, we think that the nature of the present suit is such that it is governed by the rules of equity, rather than the precise terms of the statutes, and in the second place, the 7/16ths working interest in the lease was treated by all parties from the beginning as an entire piece of property. Appellant only owned the 7/16ths interest, and assigned undivided interests in it. The receivership pertained only to the 7/16ths interest, and we perceive no reason why the owners of the 7/16ths interest, under the facts of this case, could not seek a partition of it without bringing in the owner of the remaining interest in the lease.

■ Appellant next contends that the claim of the unit holders for the $19,-820.17 is barred by limitations. We overrule the contention. This property was in custodia legis. The claim of the unit holders, in the strictest sense, was one for an accounting against the receiver

rather than against the appellant. Appellant had not had possession of the property or any of the funds in question. Appellant had not diverted the funds. What had been done was done by the receiver. We believe that our views are supported by the holdings in St. Louis Union Trust Co. v. Missouri Pac. Ry. Co. et al., Tex. Civ.App., 146 S.W. 346; and Kansas City, M. & O. Ry. Co. of Texas v. Weaver, Tex. Civ.App., 191 S.W. 591, writ refused. The cases cited by appellant are those where the plaintiff sued for a wrong committed before the reccivership began.

■ Under its third point of error appellant contends that the payments of money by the receiver extended over a period of ten years, and that the unit holders are guilty of laches in permitting such expenditures to be made, without having contested same. Appellant cites Dunn v. Tennant, Tex.Civ.App., 68 S.W.2d 269, an appeal growing out of this same receivership. As we read the opinion in that case, it does not stand for the proposition advanced by appellant. There is nothing in the record before us to indicate that the court at any previous time passed upon the claim here asserted by the unit holders. The mere fact that the court ordered the receiver to make disbursements out of the common fund would not of itself deprive the parties of the right to a proper accounting at a later date. Nor would it impose upon the unit holders a duty of objecting to such payments, so long as the orders contained nothing purporting to foreclose the right to a later accounting.

■ Under the fourth point of error appellant urges that no facts are shown which authorized the court to impress an equitable lien on appellant's interests to secure the payment to the unit holders of the $19,820.17. In our opinion the court was authorized to do this as an incident to the judgment of partition. See Sayers v. Pyland, 139 Tex. 57, 161 S.W.2d 769, 772, 140 A.L.R. 1164, where it is said: "In a partition proceeding the court has a right to adjust all such equities, and, if necessary, to fix a lien to secure the payment of same."

■ Under its fifth and last point of error appellant urges that the trial court erred in decreeing a sale of the property for the reason that the ends of justice would have been better subserved by fixing an oil payment, in favor of the unit holders, out of a fractional interest of the oil runs.

The receiver testified that the oil runs amounted to about $300 per month. Appellant's record of handling the property before the receivership was one of failure. We could not possibly hold that the court should have turned the property over to appellant, with an oil payment in favor of the unit holders, nor would we be justified in saying that there was an abuse of discretion on the part of the trial court in not continuing the receivership for many more years. After paying expenses of operation, it would have taken many years to pay the $19,820.17. The receivership had already continued twelve years, and we are not prepared to say that the trial court should have continued it for a still longer period.

Certain matters of appellate procedure have also been presented to us.

Appellees moved to dismiss the appeal because of the insufficiency of the affidavit in lieu of appeal bond filed by appellant. In an unpublished opinion we held that the affidavit could be amended, and such has been done.

Several weeks after submission of the case in this court, appellant filed here a motion to supplement the record by bringing up certain orders, pleadings, and reports. Appellant's purpose, as announced in its motion, is to rebut any presumption which might be indulged in favor of the trial court's judgment based on the assumption that the claims of the unit holders for the $19,820.17 were submitted to and determined by the master in chancery, and that the master's determination thereof was approved by the trial court. We overrule the motion, because we have not based our holding upon any such assumption. We have assumed for the purpose of this opinion that claims for the $19,820.17 were not heard by the master, and that the master heard and determined only that the unit holders named in the judgment actually owned the 462/2000ths interest in the property involved. It would serve no beneficial purpose, therefore, to grant the motion to supplement the record.

The judgment of the trial court is affirmed.