Martha GILBREATH, a feme sole, et al., Appellants,

v.

Norvel DOUGLAS et al., Appellees.

No. 7479.

Court of Civil Appeals of Texas.

Amarillo.

March 1, 1965.

Rehearing Denied March 29, 1965.

Sanders, Scott, Saunders, Brian & Humphrey, Amarillo, for appellants.

Golden, Croley, Howell, Johnson & Mizell, Dallas, for appellees.

DENTON, Chief Justice.

This is a suit for a partition in kind of oil, gas and other minerals. Suit was filed by Norvel Douglas et al., hereinafter called appellees, against Martha Gilbreath et al., hereinafter called appellants, for a partition in kind of the oil, gas and other minerals under the Southwest Quarter (SW¼) of Section 58, Block 24 in Wheeler County, Texas to a subsurface depth of 2512 feet. The trial court, without a jury, ordered a partition as prayed for by appellees. The judgment limited the duration of the partition to a period of two years from July 8, 1963, "and for so long thereafter as oil, gas, condensate, and distillate or other gaseous substance is produced in paying quantities from any well situated thereon."

The appellees are either the owners of all the mineral fee interests in the subject quarter section to the depth of 2512 feet, or are the owners of oil and gas mineral leases covering such mineral interests or overriding royalty interests, save and except the undivided one-sixteenth interest in the minerals owned by appellant, Martha Gilbreath, her brother and three sisters. Three defendants whose whereabouts are unknown were cited by publication. Their undivided 3/10240 interest in the minerals is not subject to lease.

Appellants rely on nine points of error for reversal of this case. The first three points are briefed together and contend the judgment ordering a partition was erroneous in that it sought to partition a tract less than that tract comprising the original cotenancy. The contention is that appellants' cotenancy was in the oil, gas and other minerals in the South One-Half (S½) of Section 58 and not in the SW¼ of that section; that the cotenancy was not limited to a subsurface depth of 2512 feet; nor by a time limitation of two years and for so long thereafter as gas, oil, etc., were produced in paying quantities. Appellants recognize that minerals are subject to partition and that vertical and horizontal subdivision of mineral estates are a recognized right. However, under the substantially undisputed facts as to ownership of the mineral interests, appellants contend the trial court's judgment accomplished partial partition. This contention is based on the fact appellants' interests extend throughout the S½ of Section 58, thus saying the partition here is one of a lesser tract, to-wit SW¼ of Section 58, and is therefore a partial partition. This same contention is made as to the subsurface depth of 2512 feet.

The general rule is that partitioning may not be enforced as to a portion of the common property, and the suit must seek a division of the whole thereof. Battle v. John, 49 Tex. 202; 44 Tex.Juris.2nd, Partition, Section 19, and authorities cited. Appellants argue, "the whole thereof" in the instant case is the S½ of Section 58 rather than the SW¼ of that section. Necessary requisites to a partition, be it an estate in land or minerals, are that the partitioners must be joint owners of the interests sought to be partitioned, and the party or parties seeking the partition must have an equal right to possession with the other joint owners. Henderson v. Chesley, 273 S.W. 299, affirmed 116 Tex. 355, 292 S.W. 156. It is undisputed that all the mineral interests, including leases covering such mineral interests, or overriding royalty in-

terests in the SW¼ to a depth of 2512 feet, are owned by the appellees and appellants; and that all such interests are coextensive and common to that quarter section. This is not true as to the S½ of Section 58 nor to the SW¼ below a depth of 2512 feet. Some owners hold a mineral interest in the SW¼ below a subsurface depth of 2512 feet, but own no interest above that depth. The same is true as to leasehold interests in this quarter section. Others own mineral interests in the SE¼ but own no interests in the SW¼. The fact appellants own mineral interests in the S½ does not in itself render the S½ the smallest tract capable of partition. To apply such a test would nullify the basic requisites of partitioning. In our opinion the S½ under this record does not possess the necessary requisites to partition in kind. The SW¼ of Section 58 to a subsurface depth of 2512 feet is the largest unit in which the cotenancy of all parties hereto exists in common.

Appellants next contend the attempted partition was invalid by limiting the partition to the specified depth. Appellants recognize there is no legal distinction between a vertical partition and a horizontal partition. As we understand it, appellants do not assert the partition is invalid on the ground the partition was horizontal, but that it had the effect of limiting the unit being partitioned to less than the original cotenancy, to-wit the S½ of Section 58 to an unlimited depth. We think this contention is without merit. What has been said relative to the SW¼ of Section 58 as a proper unit to partition applies to the subsurface depth of 2512 feet within that tract. That horizontal area contained a cotenancy of all parties hereto and such interests were in common to that depth only.

The judgment ordering the partition limited the partition to a period already mentioned. This limitation was based on a Pooling and Unitization Agreement which pooled certain appellees' mineral interests in and under the SW¼ of Section 58. No authority has been cited which permits or prohibits a partition of the mineral estate for a period of time less than the duration of the mineral estate itself. However there can be no doubt that an oil and gas leasehold estate may be partitioned. Article 6082, Vernon's Ann.Civ. St.; Goodloe & Meredith v. Harris, 127 Tex. 583, 94 S.W.2d 1141, (Opinion adopted). The lessee in the usual oil and gas lease obtains a determinable fee in the oil and gas in place and thus obtains an interest in realty. The determinable fee interest will last only for the primary term or so long as oil or gas is produced. Norris v. Vaughan, 152 Tex. 491, 260 S.W.2d 676. The same language which limits the fee estate in the case of the oil and gas lease also limits some of the appellees' mineral interests by the language of the Pooling & Unitization Agreement. We see no valid distinction between these limitations, and conclude the time limitation does not render the partition invalid. Assuming the court had not limited the partition as to time, the pooling agreement itself places a limitation upon the mineral estate held thereunder according to its own terms. A partition in kind can not operate as a conveyance but is simply a distribution of interests in land between persons who are part owners. Arnold v. Cauble, 49 Tex. 527. A partition in perpetuity under the facts and circumstances of this case would be contrary to the expressed limitation placed on some of the appellees' mineral estate.

Appellants next attack the order of partition on the ground there is no evidence and insufficient evidence that the oil, gas and other minerals underlying the SW¼ of Section 58 were equal in value and quality. They also contend there was evidence that all portions of the tract were of unequal value as to the minerals. It was stipulated by the parties that there are five producing oil wells on the adjoining SE¼ of Section 58 and that there are presently no wells, nor have there ever been any wells, situated on the SW¼ of Section 58

producing oil, gas or other minerals. It is settled that where there has been no development or exploration for minerals of any kind under the land in question the court should assume for the purpose of partition that each acre of the land contains an equal amount of minerals. Henderson v. Chesley, Supra. Although the quarter section under consideration was undeveloped, it is adjacent to proven production in the SE¼ of the same section. The Supreme Court in affirming Henderson v. Chesley, Supra, used the following language:

"Oil is a substance peculiar to itself, and behaves in different ways under different conditions; and, certainly, the court may take into account the habit of the substance which is to be partitioned, and apply the rules of law and equity thereto in a manner to attain its equitable partition."

In its findings of fact and conclusions of law the trial court found an equal amount of oil and/or gas deposits exists under each acre of the SW¼ to a subsurface depth of 2512 feet. Under the facts and applicable rules of law, we are of the opinion the evidence supports this finding. Appellants recognize the rule that in the absence of proof it is presumed that oil and gas sought to be partitioned are equal in value. However appellants take the position there was evidence of the unequal value of the minerals in the quarter section in question. This testimony came from a consulting petroleum engineer who testified from a contour map prepared by appellee Douglas. He testified in his opinion that some parts of the SW¼ were more valuable "from an oil producing standpoint" than others. This opinion was based on the contour map referred to, but the engineer conceded the only accurate way to determine the productive zone is by actual drilling operations. There was affirmative evidence from appellee Douglas, an admitted expert, that the oil and/or gas underlying the quarter section was of equal value. He also testified that actual drilling was necessary to obtain an accurate evaluation of the oil and gas. In the absence of actual development there can be no positive, accurate evaluation of the value of the oil and gas in place. After considering all of the testimony, together with the characteristics of oil and gas reserves, we are of the opinion there was sufficient evidence to support the trial court's finding that the oil and gas underlying the tract of land involved is of equal value. We conclude the mineral interests are capable of partition in kind.

■ Finally, appellants contend there are no pleadings to support a partition less than in perpetuity and no pleadings for the limitation of two years from July 8, 1963, and for so long thereafter as oil, gas and other named minerals are produced in paying quantities. Appellees' petition contained a prayer for general relief. The rule is well settled that a general prayer authorizes the court to grant relief appropriate to the facts proved at the trial. Morris v. Biggs & Co., (Tex.Civ.App.), 165 S.W.2d 915, (Error Dismissed); 45 Tex. Juris.2d, Pleadings, Section 49, and authorities cited. In the instant case the relief granted was less or limited as to time, and we are of the opinion the court was authorized to grant such relief under the pleadings and evidence. In view of appellees' counsel's oral statement to the court at the beginning of the hearing, it can not be said the relief sought came as a surprise to appellees' counsel stated a trial amendment limiting the partition to the time indicated would be filed. Such a trial amendment was not filed but that notice together with the prayer for general relief supports the relief granted.

A careful review of the record reveals no reversible error. The judgment of the trial court is affirmed.