MORRIS et al. v. PECK.  (No. 654–4161.)

(Commission of Appeals of Texas, Section A. May 6, 1925.)

Trusts ⬦➡30½(1)—Receipt of money pursuant to agreement for its distribution held to create a trust fund for such purpose.

Where M. misappropriated money of P., thereafter M., P., and two of P.'s creditors, entered into agreement, whereby M. was to borrow such sum and pay it to defendant, one of P.'s creditors, who was then to give one-half of it to other creditor, *held* that defendant's agreement was supported by a consideration, and when defendant received money it constituted a trust fund to be applied on P.'s indebtedness to both creditors, and fact that M. consented that money be applied to debt owing by him to defendant did not release defendant from his obligation to P. and the other creditor.

Error to Court of Civil Appeals of Seventh Supreme Judicial District.

Action by J. B. Morris and others against A. P. Peck. Judgment for plaintiffs was reversed by the Court of Civil Appeals (259 S. W. 640), and plaintiffs bring error. Reversed, and judgment of district court affirmed.

Berry, Stokes & Killough, of Vernon, and Carrigan, Montgomery, Britain, Morgan & King, of Wichita Falls, for plaintiffs in error.

Pearson & Monning, of Amarillo, and O. T. Warlick, of Vernon, for defendant in error.

BISHOP, J. W. O. Powell furnished to C. M. Murray $7,000 in cash under an agreement that Murray with this sum should purchase an interest in an oil lease, with the understanding that from the proceeds to be derived therefrom the $7,000 should first be repaid to Powell, and all profits divided equally between them. Murray did not pur-

chase this interest, but appropriated this money and converted it to his individual use.

Powell was indebted to A. P. Peck and J. B. Morris each in the sum of $5,500, with interest, which indebtedness was evidenced by his notes to them.

While Powell was insisting that Murray pay him the amount or sum wrongfully converted, and Peck and Morris were insisting that Powell pay his notes then due, these parties, all being present, agreed that Murray should obtain, if he could do so, $7,000 from his relatives and friends to pay the amount which he had misappropriated, and deliver same to Peck, who should apply one-half as a payment on the indebtedness which Powell owed him, and pay the other one-half to Morris, to be applied on the indebtedness due by Powell to Morris. In order to induce Murray to secure this amount, Peck represented to him that the penitentiary was staring him in the face. Murray secured this amount from his relatives and friends, as he had promised to undertake to do, and delivered same to Peck.

However, Murray was also indebted to Peck in the sum of $7,000, which he owed him for an interest in an oil lease which Murray had purchased, and when Murray delivered this amount to Peck, he consented that it might be applied to the payment of the indebtedness owed by him to Peck and this was done.

In this suit, Powell sought to have the agreement that one-half of this sum be credited to the indebtedness which he owed Peck enforced, and Morris sought judgment against Peck for one-half of this sum under the terms of the agreement. On trial in the district court judgment was entered in favor of both Powell and Morris, but, on appeal, this judgment was reversed, the Court of Civil Appeals holding that "there was no consideration moving to Peck for his promise to apply the money which they expected to receive from Murray, one-half to Powell's note to Morris, and the other half to Powell's note to Peck." The court also held that, at the time the agreement was entered into, there was no fund in existence with which the payment was to be made, and, because the contract did not constitute an assignment of an existing fund, it was without effect and could not be enforced.

We cannot agree with either of these holdings. Under the agreement Peck was to receive one-half of the $7,000 on the payment of the indebtedness to him by Powell. This is sufficient consideration to legally bind him

to comply with its terms. It is true there was no fund in existence at the time the contract was made, but the purpose of the agreement was not to assign a fund not in esse or potential at the time. If the agreement could be said to evidence an assignment of anything, it was an assignment to Peck for the benefit of himself and Morris of the indebtedness due by Murray to Powell by reason of the misappropriation of the $7,000 furnished him by Powell.

It is clear that the purpose of Powell, Peck, and Morris in entering into this agreement was to induce Murray to obtain and pay the $7,000 in order that Peck and Morris might each receive one-half of that amount, and that Powell's indebtedness to them might be paid to that extent. To effect this purpose, the money was to be paid to Peck. When this sum was received by Peck it was a trust fund in his hands to be applied as a payment on Powell's indebtedness to him and Morris under their agreement.

Murray's consent that it be otherwise applied did not release Peck from his obligation to Powell and Morris, and his conduct in regard to the fund was as distinctly a misappropriation of it as was that of Murray in misappropriating the $7,000 furnished by Powell to purchase an interest in the lease.

Had Murray been a party to this suit, he would, by reason of having been a party to the contract, be estopped from claiming the right to insist on the payment of his personal debt to Peck until his debt to Powell had been satisfied. He was insolvent at the time of the agreement, and knew that the purpose was to effect a settlement of the debt to Powell as soon as it was possible to do so. He knew that Peck, under the terms of the agreement, was in good conscience bound to apply the payment to debts due by Powell to Morris and Peck, and, having himself agreed to this, was in no position to insist that Peck violate this obligation.

We are of opinion that no appeal from the district court was perfected from the judgment rendered in favor of Powell, but as we have concluded that the judgment of that court should be affirmed, it is not necessary to discuss that question. We recommend that the judgment of the Court of Civil Appeals be reversed, and that of the district court affirmed.

CURETON, C. J. The judgment recommended in the report of the Commission of Appeals is adopted, and will be entered as the judgment of the Supreme Court.