## MOSS & URSCHEL v. CLARK et al.

### No. 4703.

Court of Civil Appeals of Texas. Texarkana.

April 19, 1935.

Rehearing Denied April 25, 1935.

Smith & West, of Henderson, and C. H. Machen, of Dallas, for appellants.

McEntire, James & Shank, of Tyler, and Touchstone, Wight, Gormley & Price, of Dallas, for appellees.

SELLERS, Justice.

Moss & Urschel, a partnership, brought this suit upon an alleged oral contract to recover of W. G. Clark and W. Y. Rockwell one-half the reasonable cost of drilling a certain oil well, and one-half the expenses of standardizing two oil wells, and also one-half the expense of operating the lease. Plaintiffs sought the foreclosure of a mechanic's lien on the lease property. By an instrument styled a supplemental petition, plaintiffs sought to recover certain additional items of expense which occurred after the suit was filed and before the trial.

The defendants answered by general demurrer, certain special exceptions, general denial, and specially denied that they had entered into the contract sued upon by plaintiffs. The defendants were permitted to file what is termed a "trial amendment," in which is alleged:

"Defendants say that the plaintiffs and defendants are joint owners of an oil and gas lease covering 20 acres of land in the Juan Ximines survey * * *.

"Defendants say that their one-fourth interest which is encumbered by the oil payment is due to pay to the plaintiff the one-half of the maintenance of said lease and one-half of the cost of drilling the second well that has been drilled on said property.

"Defendants say that there are two wells on said property, the first one of which was drilled by the plaintiffs and was the consideration for their one-half interest in said lease and the second well drilled by plaintiffs and due to have been paid for by plaintiffs and defendants jointly, but such well was drilled without the knowledge or consent of the defendants and without the defendants having had opportunity to arrange for their own financing of their part of said well and that each of said wells have been drilled 150 feet from each end.

"Defendants say that the plaintiffs are entitled to be paid the actual cost of drilling the said well and the actual cost of operating said wells out of the interest belonging to the defendants and the defendants here now tender into court all of the undivided interest in said lease in so far as the two wells that have been drilled on said property are concerned and here now tender to the plaintiffs all of the oil to be produced from each of said wells until such time as they have been paid the costs of development."

The undisputed facts show that defendants purchased a twenty-acre lease, a part of the Juan Ximines survey in Rusk county, for a consideration of $60,000 oil payment out of one-fourth of seven-eighths of the oil produced from the lease; and the further consideration that they were to drill one well on the lease and were to drill such offset wells as the circumstances might require. The defendants in turn assigned to plaintiffs an undivided one-half interest in the lease, and as consideration plaintiffs were to drill one well on the lease, the same being the well which defendants obligated themselves to drill, which was to be drilled without expense to defendants. Defendants were to pay plaintiffs $75 per month as their part of the cost of operating the lease, and were also to pay one-half the cost of standardizing the first well, or placing the same on pump when such well might fail to flow. And if it should

become necessary to drill other wells on the lease, the expenses of the drilling, equipping, and operating cost were to be paid equally by plaintiffs and defendants. The first well was drilled and had to be placed on pump almost immediately after it was drilled. Thereafter, plaintiffs drilled an offset well on this lease without the knowledge or permission of defendants. The defendants contended that it was necessary to drill the offset well at the time it was drilled for the reason that the lease was at that time involved in a lawsuit. It is admitted, however, that about the time the offset well was completed by plaintiffs the lawsuit was disposed of in so far as this lease was concerned; and defendants admit that it was then necessary to drill the offset well which plaintiffs had drilled.

After hearing the evidence, the court submitted the case to the jury upon special issues, in answer to which the jury found that the defendants were not indebted to plaintiffs in any sum for the drilling of the second well, the equipment of the two wells, nor for the operation of the lease. In accordance with the jury's finding, the court entered judgment for defendants that the plaintiffs take nothing by their suit, and further decreed:

"It is further ordered, adjudged and decreed by the court that the entire leasehold estate covering all of said property be and the same is hereby impressed with an equitable lien in favor of the plaintiffs, H. S. Moss and J. E. Urschel, securing the said sum of eleven thousand five hundred and sixty-four and 65/100 dollars ($11,564.65), being one-half the amount which they have expended in developing and operating said property, and being the amount which defendants' interest in said property should pay before they, the defendants, receive any of the proceeds from said property.

"It is further ordered, adjudged and decreed by the court that plaintiffs retain possession, management and control of all the said property and receive all revenues derived from same, including all money now due for oil produced from said property, until they have been fully reimbursed for the defendants' one-half of said sum of twenty three thousand, one hundred twenty-nine and 30/100 ($23,129.30) dollars out of the revenues produced from the defendants' interest in said property."

From this judgment the plaintiffs have duly prosecuted this appeal.

The appellants insist that the court erred in failing to give them a personal judgment against the appellees for the amount of $11,564.65; the same being, as found by the court, one-half the amount spent by appellants in drilling the second well and operating the lease after the first well was drilled. Appellants do not insist in their oral argument upon their assignments which complained of the court's refusing them the foreclosure of the mechanic's lien, and we will therefore not discuss such assignments.

The record discloses without controversy that at the time the expenditures were made by appellants for which they seek to recover of appellees one-half the amount so expended, appellants and appellees were co-owners of the lease, the first well already having been drilled; and were jointly operating said lease with appellants in full charge of operation of the same. Under these facts there was created, as a matter of law, a mining partnership between appellants and appellees. Wagner Supply Co. v. Bateman, 118 Tex. 498, 18 S. W.(2d) 1052.

Under the provision of the assignment of the lease to appellants by appellees, appellants' interest in the lease was subject to the burdens and duties contained in the original lease in proportion to the interest purchased by them; the appellees owning the other portion of the lease, their interest was likewise subject to the duties and burdens of the original lease. It is without dispute in the evidence that the second well was drilled as an offset well and was necessary under the provision of the original lease, notwithstanding such well might have been prematurely drilled by appellants, as contended by appellees, for the reason that at the time the well was drilled the lease was involved in a lawsuit. Whatever effect the lawsuit might have had in delaying the drilling of the well, the fact remains that such suit was disposed of, in so far as this lease was concerned, about the time the well was completed by appellants, when it would have then been necessary to drill the well according to appellees' contention. The short difference in time in the drilling of the well could not have affected the rights of the parties to this suit; at least, there is no contention here that appellees were in any way injured thereby.

But it is insisted that appellants drilled the second well without consulting the appellees, and for this reason appellants were not entitled to a personal judgment against them. Appellants made numerous efforts, according to the evidence, to get in touch with appellees with reference to the

drilling of the second well, but were unable to do so, and it is a fact, as contended by appellees, that the second well was drilled without their knowledge or consent. The expenditures made in the drilling of the second well, as well as the other expenditures made by appellants, were necessary in the development, protection, and operation of the lease, and appellants having an interest in the lease, and being the partner in charge of its operation, had the legal right to develop and protect it; and the law fixes the liability of the parties in proportion to their respective interest in the lease. Indiahoma Refining Co. v. Wood (Tex. Civ. App.) 255 S. W. 212.

The expenditures made by appellants having been actually made in the necessary development, protection, and operation of the partnership property, appellants were authorized to bring an action at law against appellees for a contribution to the extent of one-half the actual expenditures so made, and this right is not dependent upon a general accounting between the parties. Indiahoma Refining Co. v. Wood, supra; Gilbert v. Fontaine (C. C. A.) 22 F.(2d) 657.

Appellees in their trial amendment sought a partition of the property and the court decreed a partition of the same. The evidence shows that at the time of the trial it was necessary for the proper development of this lease to drill another offset well. Under such facts it has been held that a partner to a mining partnership is not entitled to a partition of the property. Elrod v. Foster et al. (Tex. Civ. App.) 37 S.W.(2d) 339.

Appellees make a number of contentions with reference to the sufficiency of the pleadings of appellants which we have considered, and they are overruled. Whatever deficiency there might be in the pleadings of appellants they are, in our opinion, either supplied or rendered unnecessary by appellees' trial amendment.

If we are correct in the above conclusions, it follows that the trial court erred in denying appellants a personal judgment against appellees, and in decreeing a partition of the lease. The judgment will therefore be reversed in so far as it denies to appellants a personal judgment and grants partition of the property; and judgment is here rendered for appellants in the sum of $11,564.65.