**WARNER v. WINN.**
**WINN v. WARNER.**
No. 11548.

Court of Civil Appeals of Texas.
San Antonio.

Nov. 28, 1945.

Rehearing Denied Jan. 16, 1946.

See, also, 172 S.W.2d 526.

W. H. Kennon and Carl Wright Johnson, both of San Antonio, for Warner.

C. M. Gaines and Arnold & Cozby, all of San Antonio, for Winn.

NORVELL, Justice.

This case between Thor Warner and Wm. H. Winn involves claims and cross-claims asserted by and against the respective parties. At the conclusion of the taking of evidence, the trial judge dismissed the jury, as he was of the opinion that no fact issues were involved, and rendered a judgment from which both parties have appealed.

The original suit was instituted by Thor Warner against Wm. H. Winn, on April 23, 1942. Warner contended that he was entitled to certain monies from Winn by virtue of a contract entered into between plaintiff and defendant on February 2, 1937, covering the operation of certain gas wells in the Lopena Field, Zapata County, Texas. This suit was in the nature of one for an accounting.

On February 10, 1945, Warner filed an amended supplemental petition which contains a pleading designated as a "cross-action," which introduced an entirely new and independent assertion of liability against Winn. It appears that Winn, as operator, had drilled four gas wells upon leases covered by the operating agreement of February 2, 1937. Warner alleged that on or about June 1, 1941, Winn, as operator of the contract, had wrongfully destroyed one of the gas wells known as

Winn-Warner Vela No. 2. The evidence discloses that Winn did deepen this well so as to make it produce from another horizon.

Warner's testimony as to damages sustained by him is somewhat unsatisfactory and highly speculative. His contention was that neither before nor after the deepening operations did the well have a market value, but that before such operations said well had an "intrinsic value" of $75,-000, while after the well was deepened it had an "intrinsic value" of only $37,500, wherefore, Warner, as the owner of a one-third interest in said well, had been damaged to the extent of $12,500.

■ The trial court held, as a matter of law, that the claim for damages on the part of Warner was barred by the two-year statute of limitations. This holding was clearly correct. Warner's claim was one for the destruction of or damage to property owned by him and Winn as copartners or joint adventurers. The count is founded in tort and not upon contract.

■ As a general rule, one partner cannot sue another before an accounting. However, there are exceptions to this rule. Among these exceptions "is the right of one partner to maintain an action against another for the destruction of the joint property or its wrongful conversion." Peck v. Powell, Tex.Civ.App., 259 S.W. 640, 644 (rev. other grounds, Tex.Com.App., 271 S.W. 891) quoting with approval, 2 Rawley's Modern Law of Partnership, § 756.

In Texas Jurisprudence the general rule is stated less broadly and more accurately, as follows: "Before an accounting one partner may not sue another or others for a matter determinable only by accounting and settlement—such as a suit for a share of the property or profits or for contribution to losses or debts—unless by some agreement or act the matter in suit has been separated from partnership affairs and accounts." 32 Tex.Jur. 458.

■ Since this claim asserted by Warner against Winn is one which may be asserted by one partner against the other without the necessity of an accounting, Article 5526, and not Article 5527, Vernon's Ann.Civ.Stats., is applicable thereto. Clamp v. Nolan, Tex.Civ.App., 300 S.W. 105; Hoffman v. Godlin, Tex.Civ.App., 128 S.W. 2d 865, 32 Tex.Jur. 450, § 149, 463, § 151.

The trial court also held as a matter of law that the cost of deepening the Vela No. 2 was an expense item which should be borne one-third by Warner and two-thirds by Winn.

Upon the trial the parties stipulated, "That all other items (including the cost for deepening Vela No. 2) * * * are correct as to figures and were actually expended by Wm. H. Winn or are reasonable charges for the items as listed and in connection with the leases owned by plaintiff Warner and defendant Winn, but this is without prejudice to the right of plaintiff to assert any defense in connection with the proper application thereof and his liability therefor under the terms of the agreements between such plaintiff and such defendant and particularly as to whether or not any item should be considered as part of the operation and maintenance cost or whether or not the whole of any such item should be borne by the defendant Winn and without any liability on the part of plaintiff."

The operating agreement of February 2, 1937, provided:

"All wells, in addition to the first four, as hereinabove provided in connection with the development of the minerals, in, on and under such land, excepting oil, shall be drilled by operator, or under his direction and control, at the joint expense of both operator and owner, $2/3$ of such expenses to be borne by operator and $1/3$ thereof by owner. * * *

"After the completion of any well or wells on the above described land and premises, it shall belong jointly to the owner and operator under the terms of this agreement, and the assignment of such interest in such leases to operator, all expenses in connection with the maintenance and operation thereof in connection with the land and premises owned jointly by owner and operator, except the drilling and completing of the first four wells, as herein provided for, shall be borne by operator and owner in the proportion of $2/3$ to operator and $1/3$ to owner.

"The net profits derived from any wells completed on such premises owned jointly by the parties hereto under this agreement, after first deducting the expenses in connection with the maintenance and operation thereof and of the leasehold premises other than the costs of drilling and completing the first four wells, shall be divided be-

tween the owner and the operator in the proportion of ¾ to operator, and ¼ to owner, until the costs and expenses of drilling and completing any or all of said first four wells, as herein provided, shall have been returned to operator, and after operator has been so repaid for all of the said wells drilled up to four, at his own cost and expense, under the terms hereof, such net profits shall be divided so that operator shall receive ⅔ thereof and owner ⅓."

Vela No. 2 was one of the four wells completed as a producer under the terms of agreement. The contract contained a provision that the net profits derived from any gas wells drilled upon the property should be divided between the parties in the proportion of three-fourths to Winn and one-fourth to Warner, until Winn had been reimbursed for the sums of money he had paid out in drilling the first four wells; thereafter, the net profits were to be divided in accordance with the respective shares of the leasehold interest held by the parties, this is, one-third to Warner and two-thirds to Winn. Winn has now been reimbursed for moneys expended upon the four wells which he agreed to drill. As above pointed out, Vela No. 2 was a producer and operated as such for some period of time, so it cannot be said that the deepening operations took place under the provisions of the contract relating to drilling operations at Winn's sole expense, and reimbursement to him under the clause relating to a three-fourths—one-fourth division of net profits.

However, production of the well did eventually decline to such an extent that Winn, as operator, decided to deepen the well in an effort to increase production. He did deepen the well and a substantial increase in production was realized. It was stipulated that the charges for this operation were reasonable. We are inclined to agree with the trial court that the deepening of the well was in the nature of revoking the well and properly classified as an operational expense. However, if, because of the fact that Vela No. 2 was deepened to a different production horizon, it should be considered as an additional well under the operational agreement, Warner would still be obligated to pay one-third of its cost. In all events, there was no error in the trial court's action in this particular.

Warner asserted in the trial court that Winn has no further interest in the gas leasehold estate covering certain tracts covered by the operating agreement. This contention is predicated upon the theory of abandonment. The evidence is insufficient as a matter of law to support this theory. W. T. Waggoner Estate v. Sigler Oil Co., 118 Tex. 509, 19 S.W.2d 27.

Wm. H. Winn, by cross-appeal, presents one assignment of error asserting that the trial court erred in ruling against Winn's asserted claim to a partition of the properties owned by him and Warner as cotenants.

As above indicated, the court found that there was no disputed fact issue to be submitted to the jury and concluded as a matter of law that the asserted right of partition should be denied.

The trial court set out and described in its judgment four certain oil, gas and mineral leases and held that these leasehold estates, in so far as gas only was concerned, including the four wells and equipment thereof, were owned jointly by Winn and Warner, Winn owning a two-thirds undivided interest and Warner a one-third undivided interest; all subject to the operating agreement of February 2, 1937.

The Supreme Court in the recent case of Moseley v. Hearrell, 141 Tex. 280, 171 S.W.2d 337, held that one who holds an undivided mineral interest in and to a tract of land was entitled to a partition as against others holding undivided portions of the mineral estate, as a matter of right under and by virtue of the Texas statutes relating to partition. Articles 6082 and 6096, Vernon's Ann.Civ.Stats.

The only point of distinction between the Moseley case and this one is found in the Supreme Court's holding that the operating agreement there involved was not binding upon an assignee of Wood, who had made an oral agreement with Mrs. Hearrell under the terms of which Mrs. Hearrell was allowed to operate the lease. Consequently, there being no agreement between Mrs. Hearrell and Wood's assignee, Moseley, which would prevent a partition being had.

"The general principle of law that the right to partition is absolute must be confined in its application to tenancies where the right to partition is left to result as an ordinary legal incident thereof; it was never intended to interfere with contracts between the tenants modifying or

limiting this otherwise incidental right, nor to render it incompetent for parties to make such contracts, either at the time of the tenancy or afterwards." 40 Am.Jur. p. 5, § 5.

In this case there is in existence an operating agreement between Winn and Warner, which has never been abrogated by agreement of the parties or by the rendition of a judicial decree. This agreement does not expressly provide against partition, and an agreement preventing partition, if any there be, must be implied. An agreement against partition will be implied when a granting of such relief would destroy the estate sought to be partitioned. Elrod v. Foster, Tex.Civ.App., 37 S.W.2d 339, writ ref. Similarly, it has been held that where there exists an obligation to drill an offset well partition will not be decreed. Moss & Urschel v. Clark, Tex.Civ.App., 82 S.W.2d 1090, writ ref. It seems reasonably clear that when parties contract for the drilling of wells, and such drilling is either made the consideration for the transfer of a mineral estate or is necessary to extend or perpetuate a lease, it must be inferred that the parties to the drilling agreement did not intend for the estate to be partitioned.

On the other hand, it can hardly be said that each and every covenant or provision relating to property held in common carries with it the implication that no partition shall be had. Consequently, it is necessary in each case to examine the particular contract involved and from the provisions thereof determine whether or not the parties impliedly contracted against partition. If they did not then the right of partition is absolute.

Under the contract involved in this case, dated February 2, 1937, Winn agreed to drill four gas wells. Warner agreed to assign to Winn a two-thirds interest under certain leases in so far as gas only was concerned. These covenants were mutually dependent and have been fully performed by both parties.

The covenant contained in the agreement, which Warner says prevents a partition, reads as follows: "Operator shall have exclusive management and control of and in connection with the premises and in the development, maintenance, operation and marketing of the production from such leases, in so far as all minerals excepting oil are concerned, and as reserved by owner herein, and operator shall render a monthly statement to owner mailed on or before the 15th day of each month, showing the costs and expenses in connection with the operation and development thereof, in so far as he is able, and the owner shall, within ten (10) days thereafter, and on or before the 25th day of each such month, remit to operator his proportion of such costs and expenses as payable under the terms of this contract, and not otherwise provided for herein, and in this connection, no overhead, bookkeeping or general charges shall be made as part of the costs of operation, and no salary charged for operator excepting that operator shall be entitled to and shall receive actual cost of such latter items not to exceed an average for each year of Fifty ($50.00) Dollars per month for each and every well on such premises, excepting oil wells, to cover such costs and expenses, one-third ($\frac{1}{3}$) of which shall be borne by and paid by owner to operator monthly, and the remaining two-thirds ($\frac{2}{3}$) being operator's portion of such charge. The expense for labor shall be limited to the necessary labor actually performed on the lease by employees or immediately in connection therewith."

Warner contends that this paragraph placed upon Winn the duty to continue to manage and operate the leases and well here involved. This is true, but the covenant is independent in the sense that Winn's failure to abide by the terms thereof would not divest him of title to the property which he had acquired by virtue of having fulfilled the drilling obligations contained in the contract. From such a covenant, the breach of which is compensable in damages, an agreement not to partition the property held by the parties will not be implied.

We regard the case of Goodlee & Meredith v. Harris, 127 Tex. 583, 94 S.W.2d 1141, 1144, as being controlling upon this point. There a partition of a mineral leasehold estate was ordered, despite the fact that there was in existence an operating agreement between the parties. The contracts involved were similar to those at issue in this case. Harris made an agreement with Hix and Hubbard whereby the latter agreed to drill a well and Harris agreed to assign to them an undivided eight-sixteenths mineral interest.

The contract also provided, that the "Second party (Hix and Hubbard) shall

have full control—of the operations on this lease and first party agrees to pay his share of the expenses that occur from operating said lease, Second party shall furnish first party with an itemized statement of all bills on or before the 20th day of each month."

Hix acquired Hubbard's interest and thereafter conveyed all title and interest which he and Hubbard had acquired from Harris to Goodloe and Meredith, who, as plaintiffs, brought suit for partition against Harris.

The Supreme Court, in effect, held that Goodloe and Meredith were entitled to partition despite the clause in the contract heretofore set out, relating to the operation of lease which was binding upon Goodloe and Meredith as assignees of Hix and Hubbard. The Supreme Court said:

"The Court of Civil Appeals correctly holds that the contract was assignable; hence the rights of the parties should be measured by the contract terms, which had already been substantially executed when the dissension arose among those jointly interested in the venture. The contract was executed so far as the vesting of plaintiffs' interest in the lease is concerned when the well was completed. The right to an eight-sixteenth interest in the mineral estate did not depend solely upon a formal conveyance by defendant, but rather upon a completion of the well, Munsey v. Mills & Garitty, 115 Tex. 469, 283 S.W. 754; Wagner Supply Co. v. Bateman, 118 Tex. 498, 18 S.W.2d 1052; and defendant's refusal to execute the conveyance constituted no bar to plaintiffs' right to recover their undivided interest. Plaintiffs were not claiming title, but an undivided interest.

"There is no doubt that a joint owner or claimant of an interest in real estate may compel a partition by the other joint owners or claimants, whether such interest is held by lease or otherwise. Article 6082, Vernon's Ann.Tex.Civ.Stats.; Henderson v. Chesley, 116 Tex. 355, 292 S.W. 156; Id., Tex.Civ.App., 273 S.W. 299. * * *

"It is well settled that the obligations and equities between the parties to an action to partition property in which they are jointly interested may be adjusted and enforced by the court in the partition suit. De La Vega v. League, 64 Tex. 205; Barkley v. Stone, Tex.Civ.App., 195 S.W. 925, writ ref.; article 6086, Vernon's Ann.Tex. Civ.Stats."

We, therefore, conclude that that part of the judgment refusing a partition should be reversed.

The judgment of the trial court, except the part thereof relating to Winn's demand for a partition, is affirmed.

That part of the judgment denying Winn's claim to partition is reversed and the cause, in so far as it relates to said demand for partition, is remanded to the trial court for further proceedings in accordance with this opinion.

Affirmed in part. Reversed and remanded in part.