11th
Court of Appeals

                                                                  Eastland,
Texas

                                                                        Opinion

 

Joe W. Dimock and E. W.
Moran Drilling Company

Appellants

Vs.      
            No. 11-01-00353-CV B 
Appeal from Palo Pinto County

Louise Kadane, Michael L. Gustafson, and Carr
Staley as

Co-Trustees of the Edward George Kadane II
Trust, the

Matthew Byron Kadane Trust, and the Louise
Trust;

Daniel P. Craig; Mark W. Gray; and Michael L.
Gustafson

 

Appellees

 








Joe W.
Dimock (Dimock) and E. W. Moran Drilling Company (Moran) brought this partition
action against Louise Kadane, Michael L. Gustafson, and Carr Staley as
Co-Trustees of the Edward George Kadane II Trust, the Matthew Byron Kadane
Trust, and the Louise Trust (the Kadane Defendants); Daniel P. Craig; Mark W. Gray;
and Michael L. Gustafson.[1]  Dimock, Moran, and the Defendants are
tenants in common in oil and gas leases. 
In the trial court, Dimock and Moran sought a partition by sale of the
parties= undivided interests in the leases.  The Kadane Defendants filed a counterclaim
for declaratory judgment.  They asserted
that the prior owners of the undivided interests in the leases impliedly waived
the right to partition under the terms of a Basic Agreement and an Operating
Agreement (the Agreements) and that, therefore, Dimock and Moran were not
entitled to partition.  The trial court
granted summary judgment and rendered judgment in favor of the Kadane
Defendants on their declaratory judgment action and awarded them attorney=s fees.[2]  Because the prior owners of the oil and gas
leases impliedly agreed not to partition their interests in the leases, the
trial court properly granted summary judgment to the Kadane Defendants.  Dimock and Moran appeal from the trial court=s judgment denying them partition.  We affirm the judgment of the trial court. 

This suit
involves 4 oil and gas leases in the Blackmon Units Nos. 1 and 2 in Palo Pinto
County, Texas.  On November 5, 1973,
George E. Kadane (Kadane) and Texas Utilities Fuel Company (TUFCO) entered into
the Agreements for the purposes of exploring and developing oil and gas
prospects in Palo Pinto County, Texas and Erath County, Texas.  Kadane and Kadane Oil Company acquired the
leases during the years 1973 through 1978. 
Under the terms of the Basic Agreement, TUFCO acquired 50 percent of
Kadane=s interest in the leases.  In 1996, Dimock purchased his interest in
the leases from Kadane Oil Company. 
Moran also acquired an interest in the leases.  Dimock, Moran, and the Kadane Defendants agree that the leases
are subject to the Agreements. 

In their
first five points of error, Dimock and Moran assert that the trial court erred
in granting summary judgment to the Kadane Defendants.  In its judgment, the trial court made a
finding that:

Having examined the particular terms,
provisions and conditions of The Agreements, the Court finds that as a matter
of law the parties impliedly waived the right to a compulsory partition of The
Subject Lands and Plaintiff may not compel a partition of The Subject Lands
either in kind or by sale.

 

Joint
owners of undivided mineral interests have the statutory right to compel
partition under TEX. PROP. CODE ANN. ' 23.001 (Vernon 2000).  See MCEN
1996 Partnership v. Glassell, 42 S.W.3d 262, 263 (Tex.App. - Corpus Christi
2001, pet=n den=d).  However, joint owners
may  expressly or impliedly agree not to
partition.  MCEN 1996 Partnership v.
Glassell, supra at 263;  Long v.
Hitzelberger, 602 S.W.2d 321, 324 (Tex.Civ.App. - Eastland 1980, no writ);
Lichtenstein v. Lichtenstein Building Corporation, 442 S.W.2d 765, 769
(Tex.Civ.App. - Corpus Christi 1969, no writ). 
There is no express agreement not to partition in the Agreements.  Therefore, the issue is whether Kadane and
TUFCO impliedly agreed not to partition the mineral interests.  








In order
to determine whether the parties impliedly agreed not to partition, the courts Aexamine the particular contract involved and
from the provisions thereof determine whether or not the parties impliedly
contracted against partition.@  See Warner v. Winn, 191 S.W.2d
747, 751 (Tex.Civ.App. - San Antonio 1945, writ ref=d n.r.e.). 
In this context, courts have considered various types of contractual
provisions in drilling contracts.  For
example, if a joint owner of a mineral interest contracts to pay his
proportionate part of expenses of drilling and development of the premises for
oil and gas, that owner Acannot demand a partition of the mineral estate so as to work a
cancellation of the drilling contract, and thereby relieve himself of his
proportionate part of the expenses of developing the lease.@ 
Sibley v. Hill, 331 S.W.2d 227, 229 (Tex.Civ.App. - El Paso 1960, no
writ); Elrod v. Foster, 37 S.W.2d 339, 342 (Tex.Civ.App. - Austin 1931, writ
ref=d). 
Additionally, Awhen
parties contract for the drilling of wells, and such drilling is either made
the consideration for the transfer of a mineral estate or is necessary to
extend or perpetuate a lease, it must be inferred that the parties to the
drilling agreement did not intend for the estate to be partitioned.@  Long
v. Hitzelberger, supra at 323; Warner v. Winn, supra at 751.  In Sibley, the court determined that
a provision in an operating agreement giving the parties a preferential right
of purchase coupled with a provision that the agreement was to be in force for
so long as oil, gas, or other minerals were produced indicated a Aclear implication that the absolute right of
partition had been contracted away.@  Sibley v. Hill, supra at
229.  However, Ait can hardly be said that each and every
covenant or provision relating to property held in common carries with it the
implication that no partition shall be had.@  Warner v. Winn, supra at
751.  For example, in Warner, the
court held that an agreement to manage and operate the properties after the
completion of the drilling program, without more, was not sufficient to imply
an agreement against partition. Warner v. Winn, supra at 751.

We,
therefore, examine the provisions of the Agreements.  In Paragraph No. 2 of the Basic Agreement, the parties agreed
that Kadane would serve as the operator under the Operating Agreement attached
as Exhibit AB.@  In Paragraph No. 5 of the
Basic Agreement, Kadane and TUFCO provided that the drilling of wells on the
leases covered by the Basic Agreement would be governed by the Operating
Agreement attached as Exhibit AB.@ 








The
Operating Agreement was the A.A.P.L. Form 610 Model Form Operating Agreement,
1956 version.[3]  In the Operating Agreement, Kadane and TUFCO
stated that they had reached Aan agreement to explore and develop these leases and interests for oil
and gas [described in Exhibit AA@] to the extent and as hereinafter provided.@  The
subject leases and oil and gas interests are defined in the Operating Agreement
as the AUnit Area.@  The percentage interests of
the parties are listed as follows in Exhibit AA@ to the Operating Agreement:  Kadane 50 percent and TUFCO 50 percent.  Kadane was the operator of the Unit Area
under Paragraph No. 5 of the Operating Agreement.

Paragraph
No. 10 of the Operating Agreement is entitled ATerm of Agreement@ and provides that A[t]his agreement shall remain in full force and effect for as long as
any of the oil and gas leases subjected to this agreement remain or are
continued in force as to any part of the Unit Area, whether by production,
extension, renewal or otherwise.@

Paragraph
No. 12 of the Operating Agreement is entitled 
AOperations By Less Than All Parties@ and provides that, if the parties cannot
agree upon the drilling or completion of any well or certain other operations
on the Unit Area, any party wishing to conduct the operation may give notice of
the proposed operation to the other parties. 
The parties receiving such notice must elect whether or not to
participate in the proposed operation. 
If a party elects not to participate, that party is a ANon-Consenting Party.@  The
party proposing the operation and all other parties electing to participate in
the operation are AConsenting
Parties.@  The
Consenting Parties bear the entire cost and risk of the proposed
operation.  The Operating Agreement
provides that ownership of the Non-Consenting Parties= interests is transferred to the Consenting
Parties:  

Upon commencement of operations...each
Non-Consenting Party shall be deemed to have relinquished to Consenting
Parties, and the Consenting Parties shall own and be entitled to receive, in
proportion to their respective interests, all of such Non-Consenting Party=s interest in the well, its leasehold
operating rights, and share of production therefrom until the proceeds or
market value thereof...shall equal the total of the following:








 

(A) 200%
of each such Non-Consenting Party=s share of the cost of any newly acquired surface equipment beyond the
wellhead connections...plus 100% of each such Non-Consenting Party=s share of the cost of operation of the well
commencing with first production and continuing until each such Non-Consenting
Party=s relinquished interest shall revert to it
under other provisions of this section...and 

 

(B) 300% of that portion of the costs and expenses of
drilling, reworking, deepening or plugging back, testing and completing...which
would have been chargeable to such Non-Consenting Party if it had participated
therein....

 

If and
when the Consenting Parties recover from a Non-Consenting Party=s relinquished interest the amounts provided
for above, the relinquished interests of such Non-Consenting Party shall
automatically revert to it and from and after such reversion such
Non-Consenting Party shall own the same interest in such well, the operating
rights and working interest therein, the material and equipment in or
pertaining thereto, and the production therefrom as such Non-Consenting Party
would have owned had it participated in the drilling, completing, reworking,
deepening or plugging back of said well. 

 

This
provision subjects a Non-Consenting Party to a substantial penalty if the
proposed operation results in a producing well.  Upon commencement of the operation by the Consenting Parties, a
Non-Consenting Party forfeits its ownership interest in the well and share in
production from the well, and ownership of the Non-Consenting Party=s interest transfers to the Consenting
Parties.  See Stable Energy v. Kachina
Oil & Gas, Inc., 52 S.W.3d 327, 332 (Tex.App. - Austin 2001, no pet=n). 
The interest does not revert back to the Non-Consenting Party until the
Consenting Parties have recovered the penalty amounts set forth in Paragraph
No. 12.    








The
Non-Consenting Party provisions in Paragraph No. 12 of the Operating Agreement
and the term provision in Paragraph No. 10 of the Operating Agreement, when
considered together, imply an agreement not to partition.  Under Paragraph No. 12, ownership of a
Non-Consenting Party=s
interest transfers to the Consenting Parties. 
Thus, the Non-Consenting Party provisions directly affect title to the
undivided interests in the leases. 
Paragraph No. 12 presupposes that a Non-Consenting Party owns an
interest that is subject to transfer upon commencement of the operation.  If a party to the Operating Agreement were
allowed to partition and thereby destroy the joint ownership of the leases,
Paragraph No. 12 would be rendered meaningless.  Paragraph No. 10 provides that:

This agreement shall remain in full force and
effect for as long as any of the oil and gas leases subjected to this agreement
remain or are continued in force as to any part of the Unit Area, whether by
production, extension, renewal or otherwise.

 

Paragraph Nos. 10 and 12
indicate a Adesire of the parties to retain the cotenancy
status and operational status during the life of the leases.@  See
Sibley v. Hill, supra at 229.  We find
that Kadane and TUFCO impliedly agreed not to partition the interests in the
leases for as long as the leases remain in effect.[4]  

Other
provisions in the Operating Agreement support the conclusion that Kadane and
TUFCO impliedly agreed not to partition. 
Under Paragraph Nos. 20, 23, and 24, the parties obtained property
rights that are inconsistent with compulsory partition of the undivided
interests in the leases.  Paragraph No.
20 is entitled AMaintenance of Unit Ownership@ and provides in part:

For the
purpose of maintaining uniformity of ownership in the oil and gas leasehold
interests covered by this contract, and notwithstanding any other provisions to
the contrary, no party shall sell, encumber, transfer or make other disposition
of its interest in the leases embraced within the Unit Area and in wells,
equipment and production unless such disposition covers either:

 

(1) the
entire interest of the party in all leases and equipment and production; or 

 

(2) an
equal undivided interest in all leases and equipment and production in the Unit
Area.

 

Every such
sale, encumbrance, transfer or other disposition made by any party shall be
made expressly subject to this agreement, and shall be made without prejudice
to the rights of the other parties.

 








Under Paragraph No. 20,
the parties may sell or otherwise dispose of their interests, but any such sale
or other disposition must be made expressly subject to the Operating Agreement
without prejudice to the rights of the other parties.  In the event of any such sale or other disposition, the acquiring
party and the other parties to the Operating Agreement are joint owners of the
undivided interests in the leases, and the leases remain subject to the
Operating Agreement.  This provision
evidences an intent to maintain joint ownership of the interests.  

Paragraph
No. 23 is entitled ARenewal
or Extension of Leases@ and
provides in part:

If any
party secures a renewal of any oil and gas lease subject to this contract, each
and all of the other parties shall be notified promptly, and shall have the
right to participate in the ownership of the renewal lease by paying to the
party who acquired it their several proper proportionate shares of the
acquisition cost, which shall be in proportion to the interests held at that
time by the parties in the Unit Area.

 

If some,
but less than all, of the parties elect to participate in the purchase of a
renewal lease, it shall be owned by the parties who elect to participate
therein, in a ratio based upon the relationship of their respective percentage
of participation in the unit area to the aggregate of the percentages of
participation in the unit area of all parties participating in the purchase of
such renewal lease.  Any renewal lease
in which less than all the parties elect to participate shall not be subject to
this agreement. 

    

The opportunity to
participate in the joint ownership of renewal leases is a significant property
right.  This right further evidences an
intent to maintain joint ownership of the leases in the Unit Area.         Paragraph
No. 24 is entitled ASurrender
of Leases@ and provides in part:

The leases
covered by this agreement, in so far as they embrace acreage in the Unit Area,
shall not be surrendered in whole or in part unless all parties consent.

 

However,
should any party desire to surrender its interest in any lease or in any
portion thereof, and other parties not agree or consent, the party desiring to
surrender shall assign, without express or implied warranty of title, all of
its interest in such lease, or portion thereof, and any well, material and
equipment which may be located thereon and any rights in production thereafter
secured, to the parties not desiring to surrender it....If the assignment is in
favor of more than one party, the assigned interest shall be shared by the parties
assignee in the proportions that the interest of each bears to the interest of
all parties assignee.

 








Any
assignment or surrender made under this provision shall not reduce or change
the assignors= or surrendering parties= interest, as it was immediately before the
assignment, in the balance of the Unit Area; and the acreage assigned or
surrendered, and subsequent operations thereon, shall not thereafter be subject
to the terms and provisions of this agreement. 

      


This provision prohibits
the surrender of leases in the Unit Area, unless all of the parties
consent.  The restriction on the ability
to surrender leases further supports an implied agreement not to partition the
undivided interests in the leases.

Because
Kadane and TUFCO impliedly agreed not to partition their interests in the
leases, Dimock and Moran, as successors in interest, are not entitled to
partition the parties=
interests in the leases.  By partition,
a contracting party could frustrate or completely avoid responsibilities and
rights under a contract to which that party had agreed.  The trial court properly granted summary
judgment to the Kadane Defendants.  We
overrule Dimock and Moran=s first through fifth points of error.               In their sixth
point, Dimock and Moran assert that the trial court erred in awarding attorney=s fees to the Kadane Defendants.  In declaratory judgment actions, the trial
court may award Areasonable and necessary attorney=s fees as are equitable and just.@  TEX.
CIV. PRAC. & REM. CODE ANN. ' 37.009 (Vernon 1997).  We
review the trial court=s
award of attorney=s fees
in a declaratory judgment action under an abuse of discretion standard.  Oake v. Collin County, 692 S.W.2d 454
(Tex.1985).  Dimock and Moran=s complaint is that the trial court erred in
awarding attorney=s fees
to the Kadane Defendants because the Kadane Defendants were not entitled to
judgment on their counterclaim for declaratory judgment.  Dimock and Moran do not complain about the
amount of attorney=s fees
awarded or the testimony supporting the award. 
We have found that the trial court=s granting of summary judgment to the Kadane Defendants on their
declaratory judgment action was proper. 
The Kadane Defendants prevailed on their declaratory judgment
action.  The trial court did not abuse
its discretion in awarding attorney=s fees to them.  We overrule
Dimock and Moran=s sixth point of error.

We affirm
the judgment of the trial court.

 

W. G.
ARNOT, III

CHIEF
JUSTICE

 

March 6, 2003

Panel consists of: Arnot, C.J., and

Wright, J., and McCall, J.











     [1]Dimock and Moran also asserted a trespass to try title
claim.  The trial court entered an
agreed order severing the trespass to try title claim from this action.





     [2]The trial court made Daniel P. Craig, Mark W. Gray, and
Michael L. Gustafson parties to the judgment by separate order.





     [3]The parties added provisions to the standard Operating
Agreement, changed or modified some of the standard provisions, and deleted
some of the standard provisions.  In
order to determine whether the parties impliedly agreed not to partition, we
examined the Operating Agreement in its entirety, including the additions,
modifications, and deletions. 





     [4]In MCEN 1996 Partnership v. Glassell, supra at 264, the
parties= designations of two gas units each contained a clause
that the unit would remain effective as long Aas
there is a well within the pooled area capable of producing gas, condensate,
distillate, or other liquid hydrocarbon except oil@ or as long as Aproducing,
drilling or reworking operations are being conducted.@   The court
held that the clause waived the parties=
right to partition Aby establishing the conditions under which the unit
will cease to exist.@  While the
clause in MCEN 1996 Partnership is similar to the term provision in
Paragraph No. 10 of the Operating Agreement, we do not base our holding solely
upon Paragraph No. 10.